**LUCAS, Commissioner of Internal Revenue, v. MERCANTILE TRUST CO.**

No. 8840.

Circuit Court of Appeals, Eighth Circuit.

July 30, 1930.

40

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Barham R. Gary, Sp. Assts. to Atty. Gen., and C. M. Charest, General Counsel, Bureau of Internal Revenue, and Joe S. Franklin, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellant.

L. L. Hamby, of Washington, D. C. (Frank S. Bright, of Washington, D. C., and S. L. Swarts, of St. Louis, Mo., on the brief), for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

Appellee is executor under the will of Frank A. Ruf, who died testate on May 28, 1923, while a resident of the state of Missouri. By the terms of his will Ruf made certain provisions as to his widow and many bequests to charitable purposes. He constituted the Mercantile Trust Company his trustee, with broad powers to hold and control the trust estate.

Subdivision (1), article 11 of the will, referring to the trustee's power, is as follows:

"To hold, possess, manage and control the said trust estate and every part thereof, with full power to sell, transfer, convey and dispose of the same, upon such terms, and in such manner, and for such prices, as to my said trustee shall seem meet and proper.

"And I do give and grant unto my said trustee full power and authority to invest and reinvest all or any part of said trust estate which may come into its hands, in such manner, and in such securities, or other property, personal or real, and upon such terms, and for such length of time, as to my trustee shall seem meet and proper; it being intended hereby to give unto my said trustee full and complete authority to hold, possess, manage, control, sell, convey, encumber, lease, invest and reinvest the whole and every part of said trust estate, according to its sole judgment and discretion, without any limitation upon its powers and authority so to do."

Subdivision (2) of article 11 is as follows:

"I direct my trustee, beginning on the fifteenth day of the second month following my death, to, pay over unto my wife, Alpha H. Ruf, all of the net income and revenue derived from said Trust estate, or, if need be, such part of the corpus thereof as may be necessary for the comfort, maintenance and support of my wife, during her life. A request, in writing, to my trustee, made by my wife, stating that the sum requested by her is needed for her comfort, maintenance and support, shall be authority to my trustee to pay unto her any sum so requested, out of the corpus; or, in the event of her incapacity, then my trustee may, in its discretion, use so much of the corpus as may be necessary for her comfort, maintenance and support."

He directed that upon the death of his wife the trustee should pay to certain charitable institutions various sums of money. Among these were Father Dunne's Newsboys Home and Protectorate, the Convent of the Good Shepherd, the Epworth School for Girls, the Children's Aid Society, all at St. Louis, Mo.; also to pay the income on certain sums set aside to Bethesda, a corporation of the city of Saint Louis, Mo., for the support, maintenance, and education of poor children; to "The Little Sisters of the Poor," for the support and maintenance of aged poor; to the "German Protestant Orphans' Home" for the support and education of orphans; to another Orphans' Association for the same

purpose. The income of other sums was set aside to be used by various associations for the support and maintenance of the indigent blind, the deaf and dumb, and for medical treatment to aid crippled children. After provisions covering these matters, occurs this one:

"I direct my Trustee to pay over and deliver all of the net income and revenue received by it from said trust estate remaining in its hands, unto the St. Louis Children's Hospital to provide perpetually for free medical treatment and maintenance and support during treatment, of poor children, irrespective of consideration of nationality or religion; preference to be given to children residing in the City of Saint Louis and Saint Louis County, Missouri."

The attempted philanthropies of testator were widely and humanely extended.

He left a widow sixty-seven years of age, but no children. The widow filed no renunciation of the will in the probate court, nor did she file an election to take under the will, but has at all times accepted and acted under the provisions thereof.

The question before the Board of Tax Appeals was whether the present values of the bequests for charitable purposes were deductible from decedent's gross estate in arriving at the net estate subject to federal taxation. The Commissioner of Internal Revenue had held they were not so deductible, which made a deficiency in the estate tax of $125,679.22. The Board of Tax Appeals made findings of fact and held that the present values of these bequests could be ascertained and that they were deductible from the gross estate in determining the net estate subject to tax.

A motion by the appellee is presented and was submitted with the case to dismiss the petition for review on four grounds, namely: (a) Failure of appellant to have the clerk of the Board of Tax Appeals prepare and transmit the record to the clerk of this court within the time provided by law; (b) failure to file and transmit to the clerk of this court any statement of the evidence either in or out of time; (c) absence of assignments of error which relate to any issue that was pending before the Board of Tax Appeals; (d) failure of appellant's praecipe designating the record to be transmitted to the clerk of this court to contemplate or call for the transmission of any statement of evidence.

As to ground (c), we may say that, while the assignments of error are defective and inaccurate, they do, in our judgment, cover the errors relied on. (b) and (d) relate to the failure to file any statement of evidence. Counsel for appellee contend that under the rules of practice of this court pertaining to petitions to review decisions of the Board of Tax Appeals it is incumbent upon the party appealing to file a statement of the evidence. This contention is sound where the error assigned is as to the admission or rejection of evidence, or on the ground that a finding of the Board is unsupported by any substantial evidence. The findings of fact of the Board are before us, and the only questions with which we are concerned in this appeal are questions of law. This court has held many times that in appeals from the decisions of the Board of Tax Appeals it is limited to a review of questions of law. That is, whether the decision of the Board is in accordance with law. Whether there is substantial evidence to sustain the findings of fact is a question of law. If such substantial evidence exists, we are bound by those findings. Denver Live Stock Commission Co. v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 543; Conklin-Zonne-Loomis Co. v. Commissioner of Internal Revenue (C. C. A.) 29 F.(2d) 698; Feeders' Supply Co. v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 274; Holmquist v. Blair, Commissioner of Internal Revenue (C. C. A.) 35 F.(2d) 10; Blair, Commissioner of Internal Revenue, v. Byers (C. C. A.) 35 F.(2d) 326.

No question is raised here as to lack of substantial evidence to support the findings of fact by the Board of Tax Appeals. They are accepted by both parties. Nor is any error claimed in the rejection or admission of evidence. The only questions here relate to the construction of a will. Hence we think it would be superfluous to file a statement of the evidence. The rules of practice of this court do not require the doing of useless things. It is true that additional time was secured from the Board of Tax Appeals for preparation of a statement of evidence and for transmission of the record. This was evidently unnecessary as to the statement of evidence. We think there is no merit in grounds (b) and (d) of the motion to dismiss.

As to ground (a), it appears from the certificate of the clerk of the Board of Tax Appeals that the order of redetermination was made by the Board on October 25, 1928; that petition for review was filed by the respondent (appellant) April 13, 1929, which was within the six months provided by law to file a petition for review; that on May

27, 1929, præcipe was filed by the respondent designating the documents to be transmitted by the clerk of the Board of Tax Appeals to the clerk of this court. On June 11, 1929, the Board entered an order enlarging the time for filing of the record to July 15, 1929. Six other orders were made by the Board of Tax Appeals, which resulted in extending the time for preparation of statement of evidence and transmission of record to January 2, 1930. On January 2, 1930, the Board entered an order extending time for preparation of evidence and transmission of record to February 3, 1930. No further extensions of time have been made, and the transcript of record on behalf of respondent was not completed or transmitted to this court until after the time provided in the last order of extension.

A motion to dismiss for delay can properly be made under these circumstances and should be granted unless some good cause be shown for the delay. It is apparent from the certificate of the clerk of the United States Board of Tax Appeals that there was much delay in filing the record in this court. Both parties petitioned for review. All of the orders for an extension of time were on the motion of both parties, except the last extension, which was entered January 2, 1930, enlarging the time for transmission of the record to February 3, 1930. Appellee never notified the clerk of the Board of Tax Appeals that its cross-appeal would be abandoned. The clerk apparently was waiting for the appellee to take some action. It never filed a præcipe. It is not wholly without fault for the delay. As to appellant's appeal, the documents in the record which it asked for in its præcipe May 27, 1929, were then in the hands of the clerk of the Board of Tax Appeals, and as appellant did not rely on any error as to evidence rejected or admitted or the insufficiency thereof to sustain the findings of facts, there was no need of delay as to it in sending the record to this court.

However, the delay has not been injurious to appellee and no prejudice has resulted to it therefrom. There has been some confusion as to procedure in appeals from the Board of Tax Appeals due to changes in rules of courts relating thereto and the relative newness of the procedure. We have concluded that under the circumstances here presented the motion to dismiss the petition should be denied and the appeal determined on its merits.

Section 403(a)(3) of the Revenue Act of 1921 (42 Stat. 227) provides for deducting from the value of the gross estate, to compute the net estate subject to tax, the amount of all bequests to or for the use of any corporation organized exclusively for religious or charitable purposes, no part of the net earnings of which inures to the benefit of any private stockholder or individual. Or where such bequests are made to a trustee exclusively for such purposes. It is not questioned that the institutions to which bequests were made in the will were organized exclusively for charitable purposes and otherwise came under the provisions of the act.

It is the contention of the government that under subdivision (2), article 11 of the will, the widow was given the unlimited right to invade the corpus of the trust and absorb any part or all thereof for her comfort, support, and maintenance and therefore the value of the charitable bequests could not be ascertained, and hence could not be deducted from the gross estate for the purpose of computing the net estate subject to tax. In Humes et al. v. United States, 276 U. S. 487, 48 S. Ct. 347, 72 L. Ed. 667 (Syllabus), the Supreme Court held that: "Under § 403(a)(3), of the Revenue Act of 1918, which provides that bequests to charitable corporations may be deducted in determining the net estate subject to estate tax, a contingent bequest the value of which cannot be determined from any known data but depends on mere speculation, is not deductible." Appellant's main reliance is on this case.

Does this will vest in the widow an unlimited discretion to withdraw the principal of the estate for her comfort, maintenance, and support? If so, it would be impossible to determine the value of the bequests to charity.

In the case of First National Bank of Birmingham v. Snead (C. C. A.) 24 F.(2d) 186, 187, the will contained this provision: "If at any time in the opinion of said trustees the net income from said trust estate shall not be sufficient for the proper support and comfort of my said wife, the trustees shall pay over to my said wife such additional sum or sums out of the principal of said trust estate as to them may seem necessary or desirable for such purposes."

The will contained other provisions giving the trustee power to reinvest the trust estate. The court said in its opinion: "Those allegations indicate that the possibility of the exercise in good faith of the power conferred on the trustees resulting in the exhaustion of the trust estate is so remote that a finding that, by reason of the existence of that power,

the vested interests of the charitable institutions had no substantial value when the will took effect, would be arbitrary and unwarranted. It is not to be supposed that, if those bequests were subject to sale or transfer, it would be seriously disputed that, in the circumstances disclosed, they could have been disposed of for a substantial sum at the time deductions from the testator's gross estate were to be made. We think that the averments of the complaint show such a state of facts that the existence of the power conferred on the trustees to invade the corpus of the trust estate cannot properly be given the effect of depriving the bequests to the charitable institutions of any substantial value. For estate tax purposes the approximate amount of that value was ascertainable, and was allowable as a deduction from the testator's gross estate."

In Hartford-Connecticut Trust Co. v. Eaton (C. C. A.) 36 F.(2d) 710, the will contained this provision: "I further give to my said trustee power to pay over to or for the benefit of my said wife any part of the principal of the trust fund which it may deem necessary or advisable for her comfortable maintenance and support."

These cases differ somewhat from the case at bar in that the trustees are given in terms certain discretion as to payments to be made to the widow. Referring to what was necessary for the proper support of the widow in the Hartford-Connecticut Trust Company Case the court said, page 711: "We can understand this in no other way than as importing the condition that, with due regard to changes in cost, the power is intended only to secure to the beneficiary the kind of living to which he is used and as interpolating the words expressly used in the will under consideration in Ithaca Trust Co. v. U. S. Indeed, it is patent that in the ordinary case this is all that a testator really wants, and all that the beneficiary needs."

In Ithaca Trust Company, Executor and Trustee, v. United States, 279 U. S. 151, 49 S. Ct. 291, 73 L. Ed. 647, the will under consideration made certain bequests to charities to be paid after the death of the testator's wife from a residuary estate bequeathed to her for life and allowed her to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." A standard was there fixed capable of being stated in definite terms of money. The court says it was not left to the widow's discretion. That is the only claimed difference between that case and

this. We are satisfied that here the amount necessary for the comfort, maintenance, and support of the widow was not left entirely to her discretion. She was to have, *if need be,* such part of the corpus as might be necessary for her comfort, maintenance, and support during her life. If the will had said, as in the Ithaca Trust Company Case, "that may be necessary to suitably maintain her in as much comfort as she now enjoys," the cases would have been parallel, but considering all the terms of this will, the result is the same. Some one must determine what the term "if need be" means; also what the phrase, "may be necessary for the comfort, maintenance and support of my wife during her life," means, and the one to determine that within reasonable bounds was the trustee. If a trustee, upon a mere written notice of the widow that she needed the entire corpus of the estate for her comfort, maintenance, and support, should turn over the same to her, it would, in our judgment, be guilty of a dereliction of duty.

Certainly the trustee was to exercise some control. Why a trusteeship at all if the widow could, if she desired, take the entire estate for her comfort and convenience? If the government's theory is correct, the trustee might know she did not need it but would be powerless to stop her squandering the entire estate if she so desired. All the bequests for charitable purposes could be cut off at the whim of the widow by merely sending a written communication to the trustee that she needed the entire estate for her comfort and support. The request in writing to the trustee by her stating the sum needed for such support was mere authority to him to pay her if such sum was in his judgment in good faith needed to maintain her in a manner befitting her station in life. The entire will shows that the power of the widow is limited and restricted by the judgment of the trustee. The desire of the testator is apparent. His humane purposes, after providing amply for his widow, to assist unfortunate and afflicted humanity should not be destroyed by a strained and almost ridiculous construction of the will.

Doubts in taxing statutes should be resolved in favor of the beneficiary, Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211, and funds set aside by a charitably inclined testator entirely for the benefit of poor, crippled, and orphaned children, and for the support of the indigent blind, the deaf, the dumb, and the aged poor, should not be taken for taxes unless such is the clear intent of the law.

It is urged by the appellee that the language of paragraph 2 of item 11 of the will is in the disjunctive; that the trustee is directed, beginning the 15th day of the second month following decedent's death, to pay to the widow the entire income of the estate, *or* if need be "such part of the corpus thereof as may be necessary for the comfort, maintenance and support of my wife, during her life." This latter provision is an alternative one, and it is claimed by appellee that the widow could take the income of the estate for life or if need be such part of the corpus as was necessary for her maintenance and support during the balance of her life, but that she could not have the income and also part of the corpus; that she must choose between the two. There is much force in this contention, but we do not deem it necessary to pass thereon. Under the decision of the Supreme Court in Ithaca Trust Co. v. United States, supra, the provision for the maintenance of the wife did not make "the gifts to charity so uncertain that the deduction of the amount of those gifts from the gross estate under section 403(a)(3), supra, in order to ascertain the estate tax, cannot be allowed. * * * There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." The Board of Tax Appeals held "that the present values of these bequests at the date of death of the testator are deductible from the gross estate in determining the net estate subject to taxation."

That decision is right and is affirmed.