## MILLARD v. HUMPHREY et al.
No. 222-A.

District Court, W. D. New York.
Oct. 26, 1934.

Hubbell, Taylor, Goodwin, Nixon & Hargrave, of Rochester, N. Y., for plaintiff.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y., and Joseph J. Doran, Asst. U. S. Atty., of Rochester, N. Y., for defendants.

KNIGHT, District Judge.

Plaintiff, as executor of the estate of George N. Crosby, deceased, filed with the defendant herein, as collector of internal revenue, a federal estate tax return showing a tax payable of $335.56. Upon auditing the return, the Commissioner of Internal Revenue levied an additional assessment of $10,-442.07 against the estate. This additional tax was paid under protest. The present action was commenced after a claim for refund was rejected by the Commissioner.

The will of George N. Crosby, after setting forth several small bequests, provided that his wife, during her life, was to have the income and use of the remainder. It also provided: "And I further give, devise and bequeath to my wife, Pauline Houston Crosby, any part of the principal of the rest of my estate, either real or personal, which she may need for her support." Subject to the above-mentioned provision for his wife, testator bequeathed the remainder of his estate, with the exception of one bequest of $1,000, to various charitable and educational institutions. In making the tax return, the whole amount of this remainder was deducted under section 403 (a) (3) of the Revenue Act of 1921 (42 Stat. 279), from the gross estate in arriving at the net taxable estate. This deduction was disallowed by the Commissioner on the ground that the amount of the bequests to charitable and educational institutions could not be definitely determined and thus had no ascertainable value as of the date of decedent's death. This value, it is contended, could not be determined because of the right of the wife to invade the principal of the trust fund.

Plaintiff asserts that the right of the wife to invade the principal was limited to the amount needed to support her in the style to which she had been accustomed, that her income was more than enough to support her in such style, and therefore that, at the date of the decedent's death, there was no reasonable possibility of an invasion of the principal, and the deduction was properly made.

■ It has been sufficiently determined in Ithaca Trust Co. v. United States, 279 U. S. 151, 49 S. Ct. 291, 73 L. Ed. 647, and United States v. Provident Trust Co., 291 U. S. 272, 54 S. Ct. 389, 78 L. Ed. 793, that the estate, so far as may be, must be settled as of the date of the testator's death. Although facts are now known by which the amount which the charitable and educational institutions will receive may be determined, resort to them may not be had in settling the amount of this tax.

The will provided for the use by the widow of any part of the estate which she might need for her support. Many cases involving the construction of wills containing provisions similar to the one here in question have been considered by the courts. In Ithaca Trust Co. v. United States, supra, the testator specifically provided that the principal was to be invaded only to the extent necessary to suitably maintain his wife in as much comfort as she had enjoyed to the time of testator's death. In that case it was held that the uncertainty as to the amount to be received by the charitable institutions named as remainderman was not such as to preclude deduction. Since the income was more than sufficient to provide that standard of living for the beneficiary, there was not such uncertainty about the amount of the bequests to charity that they could not be valued for the purpose of deduction. Other decisions have held that this limitation is implied in any grant of a right to invade the principal of an estate for amounts "necessary" to provide support and comfort. They have uniformly held that the power of invasion was intended by the testator to secure to the widow the same standard of living to which she is accustomed and nothing more.

In Lucas v. Mercantile Trust Co. (C. C. A.) 43 F.(2d) 39, 40, the testator provided for payment to his wife of the income of the estate, "or, if need be, such part of the corpus thereof as may be necessary for the comfort, maintenance and support of my wife, during her life." It was further provided that: "A request, in writing, to my trustee, made by my wife, stating that the sum requested by her is needed for her comfort, maintenance and support, shall be authority to my trustee to pay unto her any sum so requested, out of the corpus." The court there held that the trustee was required to exercise control over any invasion and to oppose it if it was not necessary, in order to prevent the thwarting of the testator's desires on the mere statement of the beneficiary that she needed the whole amount of the estate for her support. In First National Bank v. Snead (C. C. A.) 24 F.(2d) 186, 187, the provision read: "If at any time in the opinion of said trustees the net income from said trust estate shall not be sufficient for the proper support and comfort of my said wife, the trustees shall pay over to my said wife such additional sum or sums out of the principal of said trust estate as to them may seem necessary or desirable for such purposes." In Hartford-Connecticut Trust Co. v. Eaton (C. C. A.) 36 F.(2d) 710, the provision was as follows: "I further give to my said trustee power to pay over to or for the benefit of my said wife any part of the principal of the trust fund which it may deem necessary or advisable for her comfortable maintenance and support." In both of these cases it was held that the widow was limited in her invasion of the principal to such amounts as could be determined to be necessary for her comfortable maintenance and support. In each it was held that, where the income of the estate was more than sufficient for the widow's support, the fact that an invasion of the principal might be made, if necessary, would not preclude deduction under the estate tax law of the amount of the bequests to charitable remaindermen.

■ The determination as to when the "need" or "necessity" for an invasion of the principal arises and the extent of the invasion are not left to the beneficiary, but are subject to the control of the trustee and, through him, of the court. The beneficiary may not defeat the intention of the testator by merely asserting that she needs part or all of the principal of the estate for her support when, in fact, there is no necessity for an invasion. In the present case the determination of the amount Mrs. Crosby might need for her support was no more discretionary with the widow than it was under the Stewart will in Ithaca Trust Co. v. United States.

■ There is testimony before the court that the Crosbys lived in a modest home and had no dependents. They had two servants, one of whom worked in, and was paid by,

the factory part of the time. They did no formal entertaining and lived in an inexpensive manner. In the opinion of their attorney, who had known them for thirty years, not only in a social but also in a professional way and in relation to Mr. Crosby's business, their household expenses would not exceed $10,000 per year. The total value of the decedent's estate, less his debts, was stipulated to be $455,180.41. Defendant does not seriously contend that this amount properly invested would not return an income substantially in excess of $10,000. At the time of testator's death, only a small portion of his estate was not in the form of investments. It is significant to note that during the four years prior to Mr. Crosby's death and in the year of his death his stock holdings in the Crosby Frisian Fur Company, valued in the return at $47,439, returned an average income of over $16,000 per year. This one item was more than sufficient to cover all of the yearly living expenses. The showing of the above facts, as of the date of the determination of the tax, brings this case within the scope of the cited cases in which the income could be determined as being sufficient to support and maintain the beneficiary. There was no reasonable possibility of invasion of the principal at the time of Mr. Crosby's death. The fact that an invasion did actually occur to the extent of $6,900, by consent of the remaindermen, cannot affect the determination that at the time of decedent's death the necessity of such an invasion was not foreseeable. Turning to the actual facts, merely for corroboration of this determination, it is found that Mrs. Crosby received as income from the estate a total of $45,795.79, over a period of seventeen months, an average of over $20,000 per year. Between the date of her husband's death and her death, Mrs. Crosby's estate increased over $20,000. It is evident that the invasion was not necessary and would not have been allowed over objection by the remaindermen.

The amount to which the charities were entitled under the will could be determined by deducting the value of the life interest from the amount of the trust fund. This value may be estimated by use of the mortality tables. Ithaca Trust Co. v. United States, supra. Thus there remains no uncertainty as to the amount of the gifts to charity "appreciably greater than the general uncertainty that attends human affairs," and the estate is entitled to deduct the amount of such gifts from the gross estate in determining the net taxable estate.

Humes v. United States, 276 U. S. 487, 48 S. Ct. 347, 348, 72 L. Ed. 667, principally relied upon by the defendant, is unlike the present case in many respects. There no part of the principal of the trust fund was to be turned over to the charities specified if the beneficiary of the trust reached the age of 40 years. Portions of the principal were to be turned over to the beneficiary of the trust if she attained the ages of 30 and 35 years, and the balance if she lived to be 40 years of age. Only if she died without issue before attaining the age of 40 were the specified charities to receive anything. Tables were offered to show what the probability is that a woman dying at a certain age will be unmarried and if she marries what the probability is that she will die childless. The court said of them: "The volume and character of the experience upon which the conclusions drawn from these two tables are based differ from the volume and character of the experience embodied in standard mortality tables almost as widely as possibility from certainty." The calculation based on the tables offered was held "mere speculation." In Pennsylvania Co., etc., v. Brown (D. C.) 6 F. Supp. 582, the will provided for annuities to eight beneficiaries and that, if any of four nieces and nephews should leave daughters surviving them, each surviving daughter was to receive $5,000. If there was any remainder, it was to be paid over to certain charities. The court held that it would be ludicrous to attempt to make any findings of fact by which the amount which the charities would ultimately take could be ascertained. In both of the above-mentioned cases tables from which deductions could be made with reasonable certainty were lacking. In the present case, recognized and standard mortality tables are available for computing the value of the remainder interest.

By the terms of the codicil to the will, Mr. Crosby directs his executors to sell to his six business associates his shares of stock in the Crosby Frisian Fur Company at a price approximating book value. The right to buy was to extend during the life of Mrs. Crosby and a niece. The latter still survives. The value of the stock as determined by the Commissioner of Internal Revenue was $400 per share. Defendants claim it is apparent that the principal of the residuary estate might be substantially reduced during the lifetime of the widow through the exercise of this privilege to purchase, and thus her income might be reduced sufficiently to compel her to resort to the principal.

Assuming a deduction from the estate of an amount equal to the difference between the book value and the appraised value is made, it is not possible that any loss to the estate on this account would reduce materially the income from the estate. Indeed, assuming a total loss in this stock from its appraised value had been sustained, the income from the balance of the estate was more than sufficient to adequately support and maintain the widow. As a matter of fact, within ten months after Mr. Crosby's death, four-fifths of this stock was purchased under this privilege at $348.85 per share. In 1926 all the balance of the stock was sold at $260.07 per share. The income from the estate, subsequent to the sale of the four-fifths of this stock and the time of the death of Mrs. Crosby, or a period of practically seven months, was $19,432.30.

The government claimed the stock should have been appraised by the Commissioner at book value. It does not appear that this could make any difference in the conclusions above arrived at.

Defendant makes the further contention that, in the event of a determination that plaintiff is entitled to a deduction, the deduction may not exceed one-half of the estate after the deduction of decedent's debts. Section 17 of the Decedent Estate Law of New York State (Consol. Laws N. Y. c. 13) provides that a devise or bequest to charitable or other named corporations, by a person having a wife, child, or descendant or parent, of more than one-half of his estate after payment of his debts, shall be valid to the extent of one-half and no more. In the present case, the value of decedent's estate as of the date of his death as determined by the Commissioner of Internal Revenue was $461,530.92. Decedent's debts amounted to $6,350.51. Therefore the value of the estate less debts was $455,180.41. One-half of that sum is $227,590.20. Defendant asserts that this is the greatest amount which may be allowed as a deduction.

It is the plaintiff's position that the section has no application to the present estate, because, under the statute, only those next of kin specifically named in the section can enforce the rights conferred by its provisions. Matter of Thompson, 126 Misc. 99, 213 N. Y. S. 422, affirmed 218 App. Div. 130, 217 N. Y. S. 865, affirmed, 245 N. Y. 565, 157 N. E. 859. Here the only person qualified to question the disposition according to the will was the widow, who declined to do so.

As hereinbefore stated, the estate tax must be determined as of the date of testator's death. It must be determined whether at the date of testator's death the title was in the widow or in the charitable beneficiary. The statute, standing alone, does not make any part of the bequest void. The effect is to make the bequest in excess of one-half voidable at the instance of one of the specified individuals. Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305. No legal title vests in these individuals merely by reason of the statute. Their equitable title may be converted into a legal title only through the exercise of the rights given them under the statute. The legal title to the charitable bequests is in the charitable beneficiaries and remains there if the will is not contested. The property passes under the will to the charitable beneficiaries, and not by reason of the waiver of the persons entitled to claim it. Matter of De Lamar, 203 App. Div. 638, 197 N. Y. S. 301; Matter of Wolfe, 89 App. Div. 349, 85 N. Y. S. 949, affirmed 179 N. Y. 599, 72 N. E. 1152.

In the present case, the widow took no action under the statute. Thus the legal right of the charitable beneficiaries was at no time disturbed and at no time vested in the widow. It was therefore determinable as of the date of testator's death that the charitable beneficiaries would receive the amount of the residuary estate less the value of the life use of the widow, and that amount is properly deductible.

Plaintiff is entitled to have judgment against the defendants in the sum of $10,-303.35, with interest from November 13, 1926.

Findings may be submitted, and such shall be construed as part of this decision.