LINCOLN ROCHESTER TRUST COM-
PANY, as Executor of the Estate of
Frank M. Harroun, Plaintiff-Appellee,

v.

George T. McGOWAN, Collector of In-
ternal Revenue, Defendant-
Appellant.

No. 282, Docket 23045.

United States Court of Appeals
Second Circuit.

Argued June 16, 1954.

Decided Nov. 15, 1954.

Swan, Circuit Judge, dissented in
part.

288

H. Brian Holland, Ellis N. Slack, Alonzo W. Watson, Jr., Washington, D. C., John O. Henderson, R. Norman Kirchgraber, Buffalo, N. Y., for defendant-appellant.

Nixon, Hargrave, Devans & Dey, Rochester, N. Y., for plaintiff-appellee; William H. Morris, New York City, of counsel.

Before SWAN, MEDINA and HARLAN, Circuit Judges.

MEDINA, Circuit Judge.

Frank M. Harroun, the decedent, died on September 29, 1946, leaving a last will and testament which was duly admitted to probate in the Surrogate's Court, Monroe County, New York. Plaintiff, the Lincoln Rochester Trust Company, was named as executor and trustee of the will on October 10, 1946.

After making certain specific bequests, the decedent, in paragraph Seventh of his will, left the residue of his estate in trust,

to pay the net income to his wife, Daisy L. Harroun, for life, and upon her death, to distribute the principal and accumulated income, after payment of two small bequests to individuals, to certain named institutions which qualified as charitable organizations within the provisions of Section 812(d) of the Internal Revenue Code, 26 U.S.C.A.

Paragraph Seventh of the will also provided:

"My trustee is hereby authorized to take, from the principal of the trust herein provided for my wife, such sum or sums as in its sole discretion may be necessary to meet any unusual demands, emergencies, requirements or expenses for her personal needs that may arise from time to time. A letter addressed to the trustee, requesting the payment of such sum or sums and signed by my said wife, shall be good and sufficient authority for the payment of such sum or sums, but said letter shall not bind or obligate my said trustee to pay any sum or sums, but the said trustee shall use its discretion solely, and its judgment shall be final and shall be binding and conclusive on all the parties interested herein. This clause is intended to provide for emergencies arising from sickness, accident or failure of investments. Need caused by support by my said wife of, notes signed by her with or endorsed for, or any obligation assumed for another, should not considered sufficient reason."

In decedent's federal estate tax return, duly filed with the Collector of Internal Revenue for the Twenty-eighth District of New York, the executor claimed as a deduction the sum of $80,-687.74, which sum, according to the return, represented the value at the date of decedent's death of the charitable bequests called for by paragraph Seventh of the will.

The Commissioner of Internal Revenue disallowed the claimed deduction upon the ground that the beneficial interest in favor of the charities was not presently ascertainable and thereupon assessed a deficiency in the estate tax in the amount of $17,338.66. On December 24, 1948, the executor paid the deficiency together with interest thereon in the sum of $1,025.87. A claim for refund of such payments with interest was filed on December 15, 1950 and, on March 26, 1951, the Commissioner disallowed this claim. This action was accordingly commenced on February 18, 1952.

All of the foregoing facts are admitted in the pleadings. Defendant denied only those allegations of the complaint in which it is claimed in general that the extent of permissible invasion of principal is limited by a standard fixed in fact and capable of being stated in definite terms of money, that the possibility of invasion of principal for the purposes specified by the decedent is so remote that the value of the charitable bequests is presently ascertainable, that the claimed charitable deduction should have been allowed and that the plaintiff should have judgment in the amount of $18,-364.53 with interest from December 24, 1948. Defendant asserted that it was without knowledge or information sufficient to form a belief as to the truth of those allegations of the complaint in which it is claimed that the income from the decedent's estate since the date of his death had been greater than the sum actually required for the support and maintenance of the decedent's wife and that no part of the principal had been paid over to or expended for her benefit.

Following the denial of a motion for summary judgment filed by the defendant, the case was tried before a judge and jury in the United States District Court for the Western District of New York. 109 F.Supp. 437.

During the course of the trial, plaintiff introduced into evidence certain documentary exhibits together with the testimony of several witnesses which tended to establish facts relative to financial conditions, investments, mode of living and health of the widow after the date of decedent's death. Defendant objected

to the admission of this evidence upon the ground that the estate tax is applied on facts existing at the date of the decedent's death and that evidence of facts occurring after that date is immaterial. Included in the evidence admitted over defendant's objection was: Plaintiff's Exhibit 4, a schedule showing the income from the trust and the estate and the payments of income to Mrs. Harroun for the six years, 1947 through 1952; Plaintiff's Exhibit 6, a list of property owned by Mrs. Harroun as of December 31, 1952, together with figures purporting to state the fair market value of these properties as of that date; Plaintiff's Exhibit 7, a statement of Mrs. Harroun's income and cash expenditures for the years 1947 to 1952 and Plaintiff's Exhibit 9, a summary of the information contained in Exhibit 7; Mrs. Harroun's testimony describing the arrangements she had with her son concerning living expenses and duties on the farm from the time he came to live with her in July, 1947 to the date of the trial; Mrs. Harroun's testimony relating to her mode of living and health during the period subsequent to her husband's death; Dr. Lenhard's testimony relating to Mrs. Harroun's mode of living and health during the period subsequent to her husband's death; the testimony of Thomas E. Hargrave, an investment broker, comprising an analysis of the soundness and the conservative and balanced nature of the securities contained in the Harroun Estate as of December 31, 1952.

At the conclusion of the plaintiff's case, defendant moved for a directed verdict upon the grounds: (1) that there were no contested issues of fact which were material to the question presented and (2) that under the terms of the will, the right to invade the corpus is left so open that it could be said, as a matter of law, that the possibility of invasion was great enough that no deduction should be allowed for charitable bequests. This motion was denied; the jury was instructed that the will set up a definite and fixed standard for the exercise of the trustee's discretion in the allowance of payments out of principal and was asked to decide (1) whether it could be predicted with reasonable accuracy whether the right to make payments out of principal would be exercised by the trustee and (2) if it could, to what extent would it be exercised. The jury decided that it could be predicted that there would be no exercise of the right to invade.

Prior to entry of judgment on this verdict, defendant moved for judgment *non obstante veredicto* or in the alternative for a new trial, asserting: (1) that the will contained no standard fixed in fact and capable of being stated in definite terms of money, sufficient to support a finding as to the possibilities of invasion; (2) that the plaintiff's evidence, viewed in a light most favorable to the plaintiff, did not show that the possibility of invasion could be reasonably predicted, and (3) that the court erred in admitting immaterial, irrelevant and prejudicial evidence offered by plaintiff over defendant's objection, to wit, evidence of facts occurring and circumstances existing subsequent to the death of the decedent. This motion was denied and judgment was entered for the taxpayer. It is from this judgment that the Collector now appeals alleging that the lower court erred in denying his several motions and in admitting, over objection, evidence of facts and circumstances existing subsequent to the date of decedent's death.

The primary question in this type of case is the ascertainment of the intention of the testator as expressed in the will. In the event that the will as thus construed makes the invasion of the corpus depend upon conditions "fixed by reference to some readily ascertainable and reliably predictable facts", so that "the amount which will be diverted from the charity and the present value of the bequest become adequately measurable", Merchants Nat. Bank of Boston v. Commissioner, 1943, 320 U.S. 256, 261, 64 S.Ct. 108, 111, 88 L.Ed. 35, then in that event, and only then, may the trier or triers of the facts proceed to inquire as to the value, at the death of the tes-

tator, of the interest of the charities, which thus would constitute a deduction for purposes of computing the estate tax to be paid. The cases on the subject are numerous, but they are all governed by the principles thus summarized. See Lincoln Rochester Trust Co. v. Commissioner, 2 Cir., 1950, 181 F.2d 424.[1]

■ The Supreme Court cases are clear and explicit. Where the invasion is to permit withdrawal from principal of sums " 'that may be necessary to suitably maintain her (the widow) in as much comfort as she now enjoys' ", it is held that "the standard was fixed in fact and capable of being stated in definite terms of money." Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647. Evidence referable to the date of death of the testator would vary in particular cases but it may not be doubted that the trier or triers of the facts, in weighing the evidence as a whole, would necessarily take into account not only all the established attendant circumstances, including the separate estate, if any, of the widow, but also the likelihood of illness or accident "inherent in any human forecast." See Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 1929, 36 F.2d 710. Indeed, the determination of the questions of fact, relative to the probability of invasion and the amount thereof, might be difficult. But the standard is fixed, the test to be applied by the court or jury is established as a matter of law. There is nothing speculative or uncertain about it.[2]

■ Where, on the other hand, as in Merchants Nat. Bank of Boston v. Commissioner, supra, 320 U.S. at pages 262, 263, 64 S.Ct. at page 112, "the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction", it is held that there are "elements of speculation too large to be overcome". In that case, invasion was permitted for " 'the comfort, support, maintenance and/or happiness of my wife' ", and the trustee was to exercise its discretion " 'with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust.' "

So also, in Henslee v. Union Planters Nat. Bank, 1949, 335 U.S. 595, 69 S.Ct. 290, 291, 93 L.Ed. 259, where the claimed charitable deduction was disallowed on the ground that the value of the ultimate charitable interest, at the date of the testator's death, was not "presently ascertainable," the income of the trust for the benefit of testator's mother was "to be used by her as she sees fit", and the invasion of principal was permitted for the mother's "pleasure, comfort and welfare"; and it was the testator's direction that "the first object to be accomplished * * * is to take care of and

---

1. In that case, this Court stated, 181 F. 2d at page 425:

"But even where there is a power to invade principal, the remainder may still be deductible provided the will sets up a definite and fixed standard for the exercise of the trustee's discretion, and thus makes it possible to predict with reasonable accuracy whether the right of invasion will or will not be exercised. We have before us therefore the legal issue as to the correct interpretation of this provision of the will and specifically whether or not it does provide such a definite and fixed standard. If it does, it is for the Tax Court, as finder of the facts, to scrutinize the evidence and ascertain whether exercise of the power of invasion, in accordance with the standard set out, is likely to deplete the remainder for which a deduction is sought. As usual, the burden of proof is on the taxpayer."

2. In numerous cases involving powers to invade principal, it has been held that the standard was so definite and fixed within the meaning of the Ithaca Trust case, that the deduction for the value of the charitable bequest has been allowed. See, e. g., Blodget v. Delaney, 1 Cir., 1953, 201 F.2d 589; Lincoln Rochester Trust Co. v. Commissioner, supra; Hartford-Connecticut Trust Co. v. Eaton, supra; First National Bank of Birmingham v. Snead, 5 Cir., 1928, 24 F.2d 186; Lucas v. Mercantile Trust Co., 8 Cir., 1930, 43 F. 2d 39; Berry v. Kuhl, 7 Cir., 1949, 174 F.2d 565; Millard v. Humphrey, D.C. W.D.N.Y.1934, 8 F.Supp. 784.

provide for my mother in such manner as she may desire".

In the case before us, invasion of the principal was permitted "to meet any unusual demands, emergencies, requirements or expenses for her personal needs that may arise from time to time" and this clause was "intended to provide for emergencies arising from sickness, accident or failure of investments." In addition, the testator specified that "need caused by support by my said wife of, notes signed by her with or endorsed for or any obligation assumed for another, should not be considered sufficient reason" to invade principal. That it was the purpose of the testator herein merely to insure that his wife would continue to enjoy her accustomed standard of living appears evident from the clear effort demonstrated in the will to disabuse anyone of the notion that the widow's mere whims would suffice to require an invasion of principal. Patently subjective criteria such as "happiness" and "pleasure," which would render the standard too indefinite, Merchants Nat. Bank of Boston v. Commissioner, supra, 320 U.S. at page 261, 64 S.Ct. at page 111; Henslee v. Union Planters Nat. Bank, supra, are noticeably absent here. The pertinent paragraph of the will specifically directs that the trustee not be bound or obligated to pay any sums merely because they are requested by the widow and further specifically excludes from the scope of permissible reasons to invade, need caused by the widow's support of or assumption of obligations for another. Thus, there is evident here no effort to render the widow the final arbiter of the propriety of invasion, a practice heretofore held fatal to any claimed deduction. Instead, the criterion employed is one of "need" resulting from limited kinds of externally caused emergencies of such a nature as would diminish the widow's income or increase her expenses so that invasion of principal would be required to maintain her customary standard of living. Certainly, increased expenditures resulting from the illness of or accidents to the widow or diminutions in income from failure of investments must have been contemplated as possible causal factors creating a need to invade principal when it was held that "proper care, support and maintenance" of the life beneficiary set up a fixed and definite standard for invading principal. Lincoln Rochester Trust Co. v. Commissioner, supra. If anything, the provision in the instant case is more specific in this regard and imposes an even more stringent limitation upon the exercise of the right to invade. Moreover, Commissioner v. Wells Fargo Bank & Union Trust Co., 9 Cir., 1944, 145 F.2d 130, wherein it was held that need arising " 'on account of any sickness, accident, want, or other emergency' " constituted a sufficiently fixed and definite standard to warrant the deduction of a charitable remainder, appears to be dispositive of any vestigial doubts that might remain concerning the definiteness of a standard which includes need resulting from sickness or accident as a permissible reason to invade principal.

In support of its position the appellant strongly relies on our decision in De Castro's Estate v. Commissioner, 2 Cir., 1946, 155 F.2d 254, 255. But there the language " 'if, during the life of my wife, * * * due to her illness, accident or other unforeseen emergency, the income * * * shall not be sufficient to amply provide for her needs,' " might fairly be interpreted as indicating that the testator had something more in mind than merely ensuring the preservation of his widow's customary standard of living, especially as the will contained the further clause, "I especially direct that no one shall have the right to call in question the propriety or the amount so applied for my wife."

In view of the foregoing, we are constrained to conclude that the will, construed as a matter of law, discloses an intention to provide for a continuance of the mode of life and standard of living of the life beneficiary and that, consequently, there is a sufficiently definite and fixed standard to permit ascertainment

with reasonable certainty of the value, as of the date of death of the decedent, of the bequest to the charitable remaindermen.

■ Having reached this determination, it becomes necessary to consider the serious and important question relating to the admission at the trial, over the Collector's objection, of evidence of events and circumstances occurring after the death of the testator.

Those cases which have held the standard of invasion to be sufficiently definite and fixed, appear to require that the probability of the exercise of the right to invade and the extent of the potential invasion, if any, be assessed as of the date of the testator's death and that this assessment be based upon circumstances as they existed on that date. In Ithaca Trust Co. v. United States, supra, the Supreme Court held that, in determining the value of a life estate prior to a charitable remainder, the life tenant's life expectancy, actuarially determined as of the date of the testator's death, controlled, and the fact that the life tenant died prematurely could not be substituted for the actuarial computation. We think the rationale of that decision also renders inadmissible the post-death evidence which was received here. Similarly, in Wells Fargo Bank & Union Trust Co. v. Commissioner, 9 Cir., 1944, 145 F.2d 132, the Court of Appeals reversed a Tax Court ruling in favor of the government because the lower court had substituted evidence of actual invasion subsequent to the testator's death for its own estimate that there was little or no probability of invasion on the date of death. In addition to these two cases, there appears in several other decisions language importing the belief that, throughout the estate tax area, the circumstances existing at testator's death are controlling in determining the probability of the occurrence of contingencies and the appropriate value of contingent interests. Merchants Nat. Bank of Boston v. Commissioner, supra, 320 U.S. at page 261, 64 S.Ct. at page 111; Henslee

v. Union Planters Nat. Bank, supra, 335 U.S. at page 600, 69 S.Ct. at page 292.

■ None of these authorities, however, sustain the broad proposition that evidence of events occurring after testator's death is never admissible. But they do impel the conclusion that, unless specifically provided for by statute, actual events occurring after the testator's death may never be substituted for the estimate of probable events made as of the time of the testator's death and based upon circumstances as they existed on that date. It seems quite clear, therefore, that only those events occurring after the testator's death which have sufficiently high probative value in establishing or clarifying the circumstances as they existed at the time of testator's death may properly be considered in making the factual determination as to the probability and extent of the exercise of a right to invade.

The fact that lower courts have in several cases admitted evidence of "subsequent" events, would not appear to detract from the validity of the conclusions here reached. In none of these cases was an objection made to the admission of the evidence nor was the issue of admissibility raised on appeal. Certainly, a contrary rule cannot be predicated solely on these omissions. Moreover, in two of these cases, Merchants Nat. Bank of Boston v. Commissioner, supra, and De Castro's Estate v. Commissioner, supra, the appellate courts determined that the standard was too indefinite and had no occasion to concern themselves with the factual inquiry.

In the instant case, most of the evidence the admission of which the defendant resisted, was calculated to impress the jury with the meager likelihood of any future exercise of the right to invade subsequent to the trial. No effort appears to have been made to relate these events and circumstances to the potentiality, on the date of the testator's death, of the exercise of the right to invade. Indeed, it is difficult to see how

an itemization and valuation of property owned by the widow six years subsequent to her husband's death, some of which, admittedly, was obtained after his death, or an arrangement between the widow and her son entered into almost a year subsequent to the testator's death, ever could be related back to the significant date. Similarly, an analysis of the soundness of the securities in the estate on December 31, 1952, without a showing that these were the same securities that were in the estate at the time of death would appear to have little relevance to the appropriate inquiry. The evidence of income received and expenditures made by the widow and her state of health during the six years following her husband's death suffers from the same infirmity.

It can hardly be doubted that the erroneous admission of this evidence, which may well have effected a substitution in the minds of the jurors of actual events and circumstances occurring after the testator's death for the jury's estimate of the likelihood on the date of death of the exercise of the right to invade principal, resulted in material prejudice to the defendant. Accordingly, the judgment of the court below must be reversed and a new trial ordered.

Reversed and remanded.

SWAN, Circuit Judge (dissenting in part).

I agree that the judgment must be reversed because of error in the admission of evidence relating to events subsequent to the testator's death, but I am unable to agree with my brothers' conclusion that the cause should be remanded for a new trial. In my view the complaint should be dismissed.

The problem, as we all agree, is whether the testamentary provisions giving the trustee power to invade principal set up "a definite and fixed standard for the exercise of the trustee's discretion, and thus makes it possible to predict with reasonable accuracy whether the right of invasion will or will not be exercised." Lincoln Rochester Trust Co. v. Commis-

sioner, 2 Cir., 181 F.2d 424, 425. My brothers construe the Seventh Paragraph of the will as authorizing invasion only to insure that the widow will continue to enjoy her accustomed standard of living. I am unable to give the testamentary provisions so restricted an interpretation. The trustee is authorized to take from the principal such "sums as in its sole discretion may be necessary to meet any unusual demands, emergencies, requirements or expenses for her [the widow's] personal needs that may arise from time to time." Her request by letter is "sufficient authority" for the trustee to exercise its discretion to invade principal. No doubt the widow's request must show that the sum requested is required for her "personal needs" but I see nothing in the Seventh Paragraph up to this point which would limit "personal needs" to expenses necessary to maintain her accustomed standard of living. For instance, if she requested payment of a principal sum to pay the expenses of a proposed trip to Europe I would say that it would be within the trustee's discretion to grant her request unless some later provision of the Seventh Paragraph further restricts the trustee's discretion. It is not, in my opinion, so restricted by the provision: "This clause is intended to provide for emergencies arising from sickness, accident or failure of investments." "Failure of investments" is not expressly limited to investments by the trustee, and should reasonably be construed to include investments by the widow as well as by the trustee. Suppose, for example, that the widow's request for money for a European trip stated that she had expected to pay for the trip out of her own savings bank account but the bank had failed. In my opinion the trustee would have discretion to invade principal to provide the sum needed for her proposed trip. I think the case at bar is more closely akin to De Castro's Estate v. Commissioner, 2 Cir., 155 F.2d 254 than it is to our Lincoln Rochester Trust Co. decision, supra. Accordingly, I would direct dismissal of the complaint.