Estate of Arthur M. Briggs, Old Colony Trust Company, Executor v. Commissioner.
Estate of Arthur M. Briggs, Old Colony Trust Co. v. Commissioner
Docket No. 9832.
United States Tax Court
1946 Tax Ct. Memo LEXIS 7; 5 T.C.M. (CCH) 1114; T.C.M. (RIA) 46294; December 26, 1946
Sumner H. Babcock, Esq., for the petitioner. Arnold R. Cutler, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner seeks a redetermination of deficiency in estate tax of $30,122.77. The principal issue is whether respondent erred in disallowing as deductions from the gross estate remainders to admitted charitable organizations provided for under a will and under a trust, where each of the instruments contained provisions for invasion of principal and which respondent contends makes the charitable remainders not "presently ascertainable." An ancillary question, apparently not contested by respondent, which can be settled under Rule 50 recomputation, relates to the allowance as a deduction *8 of reasonable counsel fees, incurred as a result of this proceeding. Some of the facts were stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner, a Massachusetts trust company, is executor of the estate of Arthur M. Briggs, hereinafter referred to as decedent, who died testate on November 29, 1943, a resident of Massachusetts. An estate tax return was filed on February 27, 1945, with the collector of internal revenue for the district of Massachusetts. Under decedent's will, executed April 29, 1937, his residuary estate was given to his widow, Olive E. Briggs, in the following terms: To my wife, Olive E. Briggs, if she shall survive me, I give, devise and bequeath all the rest, residue and remainder of my estate, whether real, personal or mixed and wherever situated to me belonging at the time of my decease, to have and to hold the same to her own use and benefit during her natural life with the right to use the same and the income therefrom as she may see fit, hereby giving full power and authority to my said wife if she shall find it necessary for her comfort, support or maintenance during her life, of which she is to be the sole judge, *9 to sell and/or use for that purpose such parts or portions of said rest, residue and remainder of my estate as she shall determine. I further authorize and empower my said wife to give good and sufficient instruments of transfer or conveyance to the purchasers thereof without applying to any Court for leave or license so to do and no purchaser is to be liable for the application of the proceeds. Upon her death, some pecuniary legacies being provided for to certain individuals, if alive, the remainder was given to certain designated charitable organizations. Under an inter vivos, revocable trust, created by decedent on February 12, 1937, of which the trust company was trustee, the income therefrom, after his death, was payable to his widow as were - * * * also such amounts from principal as the Trustee, in its sole discretion, may deem necessary or advisable for her comfort and support and in the exercise of that discretion it is my wish that the Trustee shall disregard all interests subsequent to that of my said wife. Upon the death of the survivor of decedent and his widow, remainders, inter alia, were provided for certain charitable organizations. It is deductions for the *10 charitable remainders under the will and under the trust which respondent has disallowed, explaining his action in the notice of deficiency: The foregoing items are disallowed in accordance with Sections 81.44 and 81.46 of Regulations 105 which require that, to be deductible, the value of a charitable transfer must be "presently ascertainable" and that where the transfer consists of the creation of a trust for both charitable and private purposes, the value of the portion destined for charitable use must be "severable from the interest in favor of the private use." Inasmuch as decedent provided for authority to invade the corpora of the two trusts for support and maintenance of his widow, who survived him, for her life and fixed no standard of living or limitation on the invasion, the remainders over to charities are not capable of exact computation, are not presently ascertainable, the value of the portion destined for charitable use is not "severable from the interest in favor of the private use", and no deduction is allowed. See ode, and . On November 29, 1943, the market value of *11 decedent's inter vivos trust fund was $108,169.14; the market value of the property comprising the residuary estate was approximately $78,000. At the time of decedent's death, his widow was in her sixty-fifth year, and based on the Combined Mortality Tables, had a life expectancy of 10.46 years. At that time, the widow owned in her own right cash in banks in the amount of $8,124.49; securities, cooperative bank and loan association shares amounting to $12,950; and a separate, revocable inter vivos trust fund having a market value of approximately $59,000. Upon decedent's death, his widow became sole owner of the homestead in Attleboro, Massachusetts, valued at the time of his death at $11,980, and of joint bank accounts and cooperative bank shares amounting to $13,335.76. Decedent's income and expenses for the four years prior to his death were: Income
Expenses
1939
$7,912.54
$5,865.60
1940
7,916.97
4,817.45
1941
8,032.44
5,782.99
1942
7,684.45
6,625.42
He also expended approximately $2,000 in the winter of 1939-1940 on a trip which he and his wife made to California, and in 1941 he purchased a Cadillac automobile at a cost of $1,937. *12 The widow had a separate income of her own, including her income from the Olive E. Briggs Trust, during the years 1939-1942 of approximately $2,300 on an average; her expenditures therefrom in 1941 were $1,175.01, and in 1942 were $1,748.46, and for the years 1939 and 1940 were about the same as the average for the two succeeding years. Her income and expenses from all sources for the two years since the decedent's death were as follows: Income
Expenses
1944 - Personal
$ 809.94
Olive E. Briggs Trust
2,034.38
Decedent's Trust
3,754.63
Decedent's Estate
3,289.07
$9,888.02
$6,019.24
1945 - Personal
$ 790.39
Olive E. Briggs Trust
1,938.43
Decedent's Trust
3,240.99
Decedent's Estate
2,480.50
$8,450.31
$5,936.69
Decedent's widow has no children or dependents and employs only a housekeeper-companion, who lives with her at the homestead, which the widow occupies throughout the entire year. Aside from a chronic heart condition, which occasions visits to the doctor two or three times a year, her state of health is substantially unimpaired. Since the death of her husband she has continued the practice followed by decedent during his *13 lifetime of living within the income. Decedent's widow is interested in the charitable organizations which are takers under decedent's will and deed of trust, and has included bequests to most of them in her will. Opinion Although the present case, like others involving the deductibility of charitable remainders which can be invaded if necessary for the comfort and maintenance of the life tenant, is primarily dependent upon questions of fact, situations involving similar issues tend to fall into patterns. The problem then contracts to a search for earlier examples approaching most closely the facts of the case at hand. , a decision in which respondent has acquiesced, Internal Revenue Bulletin, Nov. 13, 1946, 1, seems to us to present circumstances paralleling with considerable fidelity those of the present proceeding, both as to the terms of the operative instrument and as to the financial details of income and expenditure. To the extent that the Elmer case can be distinguished from , the present proceeding can be also. See . *14 The reference in the trust provisions to "comfort and support" is not deprived of a standard of measurement by the instruction to the trustees to exercise their discretion with an eye solely to the interests of the life tenant. . It is possible to reason that the separate income and property of the beneficiary cannot be considered in determining the likelihood of invasion, since the life tenant is free to make an immediate disposition of those assets in favor of the objects of her own bounty, secure in the assumption that the trustees are bound to protect her standard of living out of the estate; and the opinion of Judge Wyzanski to that effect in , is persuasive. But we have held otherwise. . On the authority of the cases cited, respondent's determination is disapproved. Decision will be entered under Rule 50.