Estate of Wilbur L. Jack, The National City Bank of Cleveland, Executor v. Commissioner.
Estate of Wilbur L. Jack v. Commissioner
Docket No. 10548.
United States Tax Court
1947 Tax Ct. Memo LEXIS 275; 6 T.C.M. (CCH) 281; T.C.M. (RIA) 47063; March 7, 1947
*275 Under testamentary trust, testator's widow was given four-fifths of trust income for life and trustee was authorized at its sole discretion to invade trust corpus if income proved not to be "sufficient and adequate for my wife." The remainder was given to a hospital. The widow had $12,500 in cash, her own household furniture and equipment and an automobile, a private income of $1,500, a suitable home, rent and tax free, and a prospective income of $4,500 from the trust, computed as of the date of testator's death. She was then 70 years of age. Held: The charitable bequest is deductible from the gross estate under Ithaca Trust Co. v. United States, 279 U.S. 151. W. H. Annat, Esq., 1568 Union Commerce Bldg., Cleveland 14, Ohio, *276 for the petitioner. L. R. Bloomenthal, Esq., for the respondent. HARLAN
Memorandum Findings of Fact and Opinion HARLAN, Judge: This case involves a deficiency in an estate tax in the estate of Wilbur L. Jack, deceased, originally in the amount of $13,931.61. This amount included an estate tax on a charitable bequest and on an amount paid by petitioner for attorneys fees, the deduction of which the Commissioner admitted error in his refusal to allow this deduction of attorneys fees. For some reason not evident to the Court the petition states the amount of taxes in controversy to be $14,271.41. However, the ninety-day letter and both parties in their briefs refer to the deficiency as $13,931.61. The question remaining for decision in this case is: Did the Commissioner err in disallowing a deduction in the amount of $50,120.78 from the decedent's gross estate for a charitable bequest by the decedent to the Presbyterian Hospital of Pittsburgh Pa? Findings of Fact Petitioner, The National City Bank of Cleveland, is a national banking association organized and existing under the laws of the United States, with its office and principal place of business in Cleveland, *277 Ohio. It is the duly appointed, qualified and acting executor under the last will and testament of Wilbur L. Jack, deceased, who died testate January 28, 1944, a resident of Cuyahoga County, Ohio. Said bank is also the duly appointed, qualified and acting trustee under the last will and testament of the said Wilbur L. Jack. Said decedent died leaving his widow, Olive C. Jack, born February 6, 1874, and who on January 28, 1944, had a life expectancy of 8.54 years. Decedent also left a foster daughter, Virginia L. C. Hanna, born March 1, 1906, who on decedent's death had a life expectancy of 28.72 years. Decedent's will created a trust and designated the National City Bank of Cleveland as trustee therein. He provided that four-fifths of the income of the trust estate should be paid to his wife during her lifetime and one-fifth of said income should be paid to his foster daughter, Virginia L. C. Hanna. Pertaining to said trust the material provisions of the will are as follows: ARTICLE III. * * *
(b) If in the absolute and uncontrolled discretion of the Trustee the said net income from the Trust shall not be sufficient to provide for the reasonable needs of my wife, OLIVE *278 C. JACK, during any period of the Trust created for her, the Trustee is hereby authorized and empowered, but it shall in no event be required so to do, as often as it shall be necessary, to apply or expend for the use and benefit of my said wife such portion of the principal of the Trust Estate up to and including the whole thereof as said Trustee in its absolute discretion may determine to be sufficient and adequate for my wife during her life. In Article IV wherein provision was made to pay his foster daughter one-fifth of the net income, the following is included: ARTICLE IV. And upon the further trust, to pay over and distribute to Mrs. VIRGINIA LOUISE CHESSROWN HANNA, one-fifth (1/5) of the net income of my estate, for and during the period of her natural life in monthly installments. Provided, however, that nothing in Article IV of this my Last Will and Testament shall affect the powers of my Trustee as defined in Article III hereof to use in its absolute discretion the whole of the corpus of my Estate even though such power if exercised would negative the Trust created in Article IV hereof. Article V of the will provided that in the event of the death of either Olive *279 C. Jack or Virginia Hanna the entire income of the estate should be paid to the survivor. Article VI of said will provides as follows: ARTICLE VI. And upon the death of my said wife, OLIVE C. JACK, and the death of MRS. VIRGINIA LOUISE CHESSROWN HANNA, the trust herein created for their benefit shall cease and terminate and my said Trustee shall assign, pay over, transfer, deliver and convey to the PRESBYTERIAN HOSPITAL OF PITTSBURGH, Pennsylvania, in memory of my mother, Mrs. Anna S. Jack, at one time a member of the Board of Managers of said hospital, the entire corpus of said Trust remaining in its hands unconsumed at their death together with any undistributed income therefrom absolutely and in fee simple. In the estate tax return the executor computed the value of the residual charitable bequest at $50,120.78 and this value is not disputed by the respondent provided the vesting of the charitable bequest can be established with sufficient certainty to permit its deduction. The Presbyterian Hospital of Pittsburgh is admitted to be a charitable institution as defined in section 812 (d), I.R.C.
The estate of Wilbur L. Jack was appraised as of the *280 date of his death for estate tax purposes and according to that appraisement Olive C. Jack, the widow, was possessed of the following property immediately after the death of her husband, although it was primarily listed in the estate. Bankers & Bank Clerk Mutual Benefit
Association insurance policy
$ 1,000.00
Travelers Insurance Co. insurance
policy
1,500.00
Automobile
1,000.00
Annuities with The Mutual Life Insur-
ance Company of New York paying
$92.45 per month
17,025.29
Statutory year's allowance under Ohio
law
10,000.00
Total
$30,525.29
In addition to the above Olive C. Jack was entitled to receive a monthly income of $32.40 as social security benefits and was privileged to live in her homestead, which had a value of $13,000, rent free and tax free. This home was a six-room dwelling on a lot having a sixty foot frontage known and designated as 3192 Chadbourne Road, Shaker Heights, Ohio. In addition to the occupancy of this house she received, by her husband's will, all of the contents thereof including furniture, fixtures, equipment and her husband's personal effects. On April 23, 1945, the executor of Wilbur L. Jack, deceased, transferred to *281 his trustee the following assets listed at their appraised value as of January 28, 1944: Shares
Stocks
Amount
1850
Armstrong Cork Co. - No Par
Com. at $38.6875
$ 71,571.87
300
The Louisville & Nashville
R.R. Co. - $100 P.V. Cap.
at $77.00
23,100.00
500
The Pennsylvania R.R. Co. - $50 P.V. Cap. at $27,6875
13,843.75
270
South West Pennsylvania Pipe l
Line - $10 P.V. Cap. at
$29.0625
7,846.88
200
The Westinghouse Air Brake
Co. - No Par Cap. at $23.1875
4,637.50
$121,000.00
Said trustee also held title to
decedent's homestead
13,000.00
Total
$134,000.00
In addition to the above, the executor retained in his possession approximately $12,000 in cash, the undetermined balance of which, after the payment of necessary expenditures, would be delivered to the trustee. For the calendar year 1942 Wilbur L. Jack filed an income tax return showing a total income of $19,727.25, of which income $9,737.75 was due to dividends received. In that year the taxpayer disbursed $22 for charitable purposes. For the calendar year 1943 the executors of Wilbur L. Jack filed an income tax return showing a total income of $29,423.30 of *282 which $14,423 consisted of stock dividends. During 1943 the taxpayer expended $27 for charitable purposes. The stocks owned by decedent at the time of his death and from which the above dividends were received were the same stocks as those listed above as having been subsequently transferred by the executor to the trustee with the addition of 550 shares of Armstrong Cork Company, value $21,278.13, and 235 shares of High Voltage Equipment Company, value $47,000. The total value of all stocks and bonds owned by decedent at the time of his death was $189.278.13. The total value of his estate was $231,699.38 prior to the payment of any debts, taxes, court costs and special taxes. At the time of his death decedent, his wife, Olive C. Jack, and Virginia L. C. Hanna, lived together in their homestead. Opinion The determination of the issues herein involved requires a consideration of section 812 (d), I.R.C. as in effect on January 28, 1944. [1] This section permits the deduction for estate tax purposes, from a decedent's gross estate, of certain bequests for charitable purposes. *283 The Treasury Department has prescribed detailed regulations covering the allowance of charitable bequest deductions, the relevant portions of which read as follows: Regulations 105, Section 81.44. TRANSFERS FOR PUBLIC, CHARITABLE, RELIGIOUS, ETC., USES. - * * *
If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only in so far as such interest is presently ascertainable, and hence severable from the interest in favor of the private use. Regulations 105. Section 81.46. Conditional bequests. - If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so remote as to be negligible. Where a life tenant has a qualified power to invade the corpus of a trust before the vesting of a charitable bequest, as in the case at bar, the question as to whether or not the charitable bequest is deductible for estate tax purposes is one of fact in each case. These facts embrace all *284 available knowledge pertaining to the beneficiary, the trustee and the amount and condition of the corpus of the trust. They more particularly relate to the economic, physical and mental condition, as well as the living habits, of the life tenant and the controls on the invasion contained in the will. The express wording of the regulations and the holding of the more persuasive opinions all direct that the relevant facts must be "presently ascertainable", "as of the date of decedent's death." See Estate of John W. Holmes, 5 T.C. 1289. As was stated by Justice Holmes in Ithaca Trust Co. v. United States, 279 U.S. 151, in a case wherein the widow beneficiary died within a year following the testator's death and the question before the court was one of determining the value of the widow's life estate: The estate so far as may be is settled as of the date of the testator's death * * * Tempting as it is to correct uncertain probabilities by a now certain fact, we are of the opinion that it cannot be done but that the value of the wife's interest must be estimated by the mortality tables. In the case at bar from the evidence and exhibits we know that prior *285 to January 28, 1944, the decedent, his wife and foster daughter lived together in a six-room house on a lot with a sixty-foot frontage in a suburb of Cleveland; that the income of decedent from his stocks and bonds in 1942 was approximately $10,000 and in 1943, $14,000; that the total gross estate left by decedent before the payment of any debts, taxes or special bequests was $231,699.38. Although we do not know the exact amount of that estate available for the trust corpus, that fact could be computed with comparative accuracy from the documents filed in the Jack estate showing the assets and liabilities thereof. The transfer which was made to the trustee by the executor on April 23, 1945, when added to the value of the homestead which was appraised at $13,000, showing a total trust corpus of $134,000, is but a corroboration of facts that could have been approximated as of January 28, 1944. Furthermore, from the estate appraisement we learn that Olive C. Jack was the beneficiary in four insurance policies totaling $19,525.29 and that two of those policies were payable to her in a life annuity monthly at $92.45. We also know that under section 10509-74 of the Ohio General Code she *286 was entitled to a disbursement from the estate as a widow's allowance and we may estimate that such allowance in an estate of this size would approximate $10,000. The estate tax appraisement actually showed such an allowance. We also know from the will of the decedent that said beneficiary received the household goods located in the homestead and an automobile valued at $1,000. The investments which were a part of decedent's estate on January 28, 1944, had yielded an approximate income of $14,000 during the year 1943 and although a portion of these investments of the approximate value of $69,000 did not go into the trust estate, those that did reach the trust estate had a value of $121,000, which, of course, would be based upon their income producing powers as a very controlling factor. We can therefore very conservatively anticipate that as of January 28, 1944, the trust income would approximate at least six per cent of the value of its income producing assets, or $7,000, which would be just about half of the similar income received by decedent the year previous. We know that the trustee is a banking institution operating for compensation and we can make a safe deduction that such *287 a trustee would be unlikely to squander the corpus of the estate, and thus reduce its own compensation, under a directive in the trust whereby the trustee is told to invade the trust only sufficiently "to provide for the reasonable needs of my wife" and before doing so to determine that said disbursements should be "sufficient and adequate." The testimony of the trust officer in this case as to the manner in which this particular trustee administered trust estates is but corroborative of the knowledge which any reasonable person might have concerning banking institutions as trustees. The witness stated: Q. What is your procedure if the will provides for a possibility of invasion of the corpus for the benefit of the reasonable needs of the widow. * * *
A. * * * It is the feeling that if the person wanted his wife - assuming a situation of this kind - to have the principal and had confidence in her judgment he would give her the principle. Since he has not done that, a great deal of discretion and care must be exercised to see that the trust is administered properly. The only life beneficiary who had the privilege of invading the corpus of this estate lacked but nine days *288 of being seventy years of age. She had a life expectancy of but 8.54 years. In addition to her widow's allowance and her annual income of $1,500, she had a matured insurance policy of a value of $2,500. She had her own automobile, the right to live in the homestead tax free and rent free, the value of which was $13,000, and the reasonable rental of which probably approximated $100 per month. Her husband, prior to his death, had more than a comfortable income and he had willed to her the entire contents of their homestead. The trustee was a conservative banking institution not likely to be emotionally induced to invade the corpus. Unfortunately the record in this case is very meager concerning the living habits of the beneficiary prior to her husband's death. We do know, however, that when decedent had an income of $29,000 he expended but $27 thereof for Community Chest and other charities. He evidently did not allow his generous impulses to overcome his better judgment in the frugal management of his affairs. We also know that the decedent, his wife and foster daughter lived together in a six-room house of modest value and that the trustee was instructed only to invade the corpus *289 for "reasonable needs". It is our holding that "reasonable needs" under these circumstances can be ascertainable within the degree of certainty which controls human affairs, as the Supreme Court also found in the Ithaca Trust Company case. From all of the above facts it is our determination that the possibility of the vesting of the charitable bequest in this estate, which was conditioned upon the substantial preservation of the corpus of the trust, is subject only to a condition which cannot be considered more than negligible. We have been supplied in this case with very well prepared briefs, with the petitioner contending that the trust involved herein falls under that line of cases arising upon the decision of the Supreme Court of the United States in Ithaca Trust Company v. United States, supra, wherein the testator provided that the trustee could invade the corpus in order to pay the life tenant "any sum that may be necessary to suitably maintain her in such comfort as she now enjoys." The Court in deciding that the charitable bequest had only a negligible chance of not vesting, said: * * * The standard was fixed in fact and capable of being stated in definite *290 terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs. In the case at bar the widow had, at the time of her husband's death, substantial funds of her own, her household furniture, equipment and rent taken care of, she was seventy years of age and was living in a comparatively modest home. In addition to her own income of $1,500, she could anticipate at least $4,500 income from the trust estate before invading the corpus. The respondent, however, relies upon a line of cases adhering to the authority of Merchants National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256. In that case the widow, sixty-seven years of age, was the life tenant and the trustee was directed to invade the trust corpus: * * * as my said trustee shall in its sole discretion deem wise or proper for the comfort, support, maintenance and/or happiness of my said wife, and it is my wish and will that in the *291 exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife * * * my said trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust. In this case the trustee was directed to act with liberality, and to consider the happiness of the life tenant of more importance than the welfare of the residuary beneficiaries. A recent case following the Merchants National Bank of Boston case is Estate of Joseph F. DeCastro v. Commissioner, 155 Fed. (2d) 254. In that case the trustee was directed, if the income was not "sufficient to amply provide for her needs" to invade the trust in order to "amply provide for her needs." The corpus of the trust estate at the death of the testator was $83,166.74. The annual income was $4,500. The widow was 75 years of age but her total personal estate amounted to only $4,750. The distinction between this case and the case at bar lies in the size of the personal estate of the beneficiary, in the value of the trust corpus and in the use of the words "amply provide" whereas in the *292 case at bar the trust instrument simply provides for the "reasonable needs." Certainly the "amply" provision is nearer the standard of the trust instrument in the Merchants National Bank of Boston case where the trustee was directed to provide for the happiness of the beneficiary than is the "reasonable needs" standard involved herein. It impresses us as obvious that, while the case at bar does not have as strict limitations and standards imposed upon the trustee as in the Ithaca Trust Company case, and the testimony herein does not afford us as accurate knowledge of the living standards of the beneficiary as might be available, at the same time the instruction to the trustee herein is far more rigid in the interest of the charitable remainderman than in the case of Merchants National Bank of Boston v. Commissioner of Internal Revenue, supra. Each of the numerous cases supplied by both the petitioner and the respondent in this case is distinguishable from each other and from the case at bar but, measuring all the facts in this case with our interpretation of the regulations, we believe that the possibility of the non-vesting of the charitable bequest herein cannot be *293 described as anything more than neglible. Since there must be some tax computation in this case due to the allowance of the attorneys fees as a deductible item. Decision will be entered under Rule 50. Footnotes
1. SEC. 812. [I.R.C.] DEDUCTIONS - TRANSFERS FOR PUBLIC, CHARITABLE, RELIGIOUS, ETC., USES - Net Estate. * * *
The amount of all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, * * *↩