## LINCOLN ROCHESTER TRUST CO v. COMMISSIONER OF INTERNAL REVENUE.

No. 193, Docket 21577.

United States Court of Appeals
Second Circuit.

Argued April 5, 1950.

Decided April 19, 1950.

Scott Stewart, Jr., of Rochester, N. Y. (Nixon, Hargrave, Middleton & Devans, of Rochester, N. Y., on the brief), for petitioner-appellant.

L. W. Post, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., on the brief), for respondent-appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Mary P. Morse of Rochester, N. Y., died on March 15, 1944, leaving a will wherein she bequeathed her residuary estate to a trustee to pay the income therefrom to one Lillian MacDonald for the latter's life, and to pay "the remaining principal" at her death to three named charities. The trust also contained this provision: "My said Trustee is authorized, empowered and directed also to advance from said residuary estate to the said Lillian MacDonald such sums of principal as may be necessary for her proper care, support and maintenance." The executor, in computing the estate tax due, deducted the present worth of the remainder interest, which was to go to charity, in accordance with § 812(d) of the Internal Revenue Code, 26 U.S.C.A. § 812(d), and § 81.44 of Treasury Regulation 105. The Commissioner, however, levied a deficiency assessment of $38,-929.37 on the theory that the value of the charitable remainder could not be ascertained with sufficient accuracy to permit the deduction, and he was upheld in so

doing by the Tax Court. This petition for review followed.

The life beneficiary, Miss MacDonald, had lived with the decedent as nurse, companion, and friend for approximately twenty years prior to the latter's death. At that date Miss MacDonald was 72 years of age and had a life expectancy of between seven and eight years. She had received from decedent a salary of $1,300 a year and had an additional income of $360 annually from rent of the upper story of a house which she owned. Since the decedent's death Miss MacDonald has lived in the lower story of that house. The expenses of maintenance of the house averaged $1,700.46 per year during the years 1945 through 1948. Other identified expenses paid by her during the same years averaged $2,441.65 per year; and in addition to these expenses, withdrawals from her bank account averaged $2,070.61, making a total average yearly expenditure of $6,212.73. Her net income from the trust after taxes rose from $5,406.15 in 1945 to $6,578.13 in 1948. In addition she had received a cash bequest from decedent of $10,000, and an inheritance from a sister in 1946 of $2,181.28.

Miss MacDonald worked all her life as a professional nurse, and her background was characterized by a witness as "plain and simple." She has never owned an automobile, nor has she taken any trips of consequence save those she made with the decedent in the course of her employ. She has no servants. In May, 1947, she was operated on for the removal of cataracts from her eyes at a cost of $600, and she may require another eye operation. At no time has she required or requested an advance from the principal of the trust. The principal totals $153,983.37.

The governing legal principles have been rather clearly defined. Under the statute and regulations and present worth of a charitable remainder such as this is deductible if its value is ascertainable with sufficient definiteness. Hence the deduction should be made here unless the existence of the power in the trustee to invade the principal for the "proper care, support and maintenance" of the life beneficiary makes the value of the remainder interest too indefinite to be ascertained. But even where there is a power to invade principal, the remainder may still be deductible provided the will sets up a definite and fixed standard for the exercise of the trustee's discretion, and thus makes it possible to predict with reasonable accuracy whether the right of invasion will or will not be exercised. We have before us therefore the legal issue as to the correct interpretation of this provision of the will and specifically whether or not it does provide such a definite and fixed standard. If it does, it is for the Tax Court, as finder of the facts, to scrutinize the evidence and ascertain whether exercise of the power of invasion, in accordance with the standard set out, is likely to deplete the remainder for which a deduction is sought. As usual, the burden of proof is on the taxpayer. See generally Paul, Federal Estate and Gift Taxation § 12.26, Supp. 1946; Montgomery, Federal Taxes—Estates, Trusts and Gifts 1948-49, 802-809.

In deciding whether the language of the will provides a fixed and definite standard for invasion, we enter a field where fine verbal distinctions appear to hold full sway. A power to take from principal for the life tenant sums "necessary to suitably maintain her in as much comfort as she now enjoys" allows deductions of remainders to charities, Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, while a mandate to the trustee to "be liberal" or to concern itself with the beneficiary's "happiness" or "pleasure" does not. Merchants Nat. Bank of Boston v. C. I. R., 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290. Our problem is to decide whether the language used here, "proper care, support and maintenance," authorizes invasion of corpus only so far as is necessary to maintain the objective measure of the standard of living enjoyed by the life tenant at the decedent's death, under the authority of the first case, or whether it is so subjective a standard as to allow invasion to satisfy any desire of the life tenant, under the authority of the latter two cases.

Language somewhat similar to that before us was involved in the recent case of Berry v. Kuhl, 7 Cir., 174 F.2d 565, 568, where Judge Minton in a carefully reasoned opinion held for the court that permission to invade the principal for the life tenant's "support and maintenance" allowed invasion only to maintain the beneficiary in the station of life she enjoyed at the time of the testator's death, and that this was a sufficiently definite standard to qualify for the deduction. The decision relied extensively on the earlier decision to like effect of this court in Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 36 F.2d 710. And the Tax Court itself has recently held that the standard is definite and the deduction is allowed where the power of invasion is for "care, maintenance and support," Estate of Wetherill, 4 T.C. 678, petitions for review dismissed, 9 Cir., 150 F.2d 1019; "comfortable support and maintenance," Estate of Elmer, 6 T.C. 944; "comfort and support," Estate of Jack, 6 T.C. 241; "comfort and support," Estate of Kenny, 11 T.C. 857; and "comfort, support or maintenance," Estate of Briggs, 5 T.C.M. 1114.

Respondent does not dispute the correctness of these decisions, but contends in substance that the word "proper," appearing in this will before "care, support and maintenance," gives the trustee such discretion that the charitable remainders cannot be valued and hence the deduction cannot be allowed, citing Estate of Holmes, 5 T.C. 1289, which was relied on below. We do not think this contention can be sustained. In the early case of First Nat. Bank of Birmingham v. Snead, 5 Cir., 24 F.2d 186, 188, it was held that "proper support and comfort" is only such support and comfort as is "suitable or appropriate to the station in life to which she was accustomed." So in Estate of Schoonmaker, Jr., 6 T.C. 404, the trustees had the right to invade corpus if they deemed income insufficient in the event of "any illness, accident or other emergency or to provide for the proper maintenance, support, comfort and well being" of the beneficiary. The Tax Court found as one definite ground of decision—an alternate ground

being rested upon a disclaimer by the beneficiary—that the trustees were permitted to invade corpus only to the extent necessary to allow the beneficiary to enjoy her accustomed standard of living and that therefore the probability of its invasion was too remote to deny the deduction. Again we can see no real distinction between "proper" and "reasonable" support, and yet the Tax Court does not hold that the addition of the word "reasonable" to the usual grant increases the trustee's discretion to the point of preventing the deduction of the remainder. See Runyan, 5 T.C.M. 531, where the instrument spoke of "reasonable comfort and support," and Estate of Jack, 6 T.C.M. 281, where the language was "sufficient to provide for the reasonable needs of my wife." If anything, the natural meaning of "proper" —as "fit, suitable, appropriate," or "right," compare Webster's New International Dictionary, 2d Ed., Unabridged, 1939, def. 4— implies more conformity to a standard, instead of unrestrained discretion, than do some of the other quoted expressions.

Respondent properly urges the controlling force of state decisions upon the question of the interpretation of the will. Blair v. C. I. R., 300 U.S. 5, 9, 10, 57 S.Ct. 330, 81 L.Ed. 465. But we regard the state decisions as reinforcing the conclusion we have stated. Thus In re Martin's Will, 269 N.Y. 305, 199 N.E. 491, 492, holds that a provision for invasion of principal for the "care, support and comfort" of the life tenant permits taking from the principal only when the income from the trust is insufficient for the life tenant's support, and that whether or not the income is insufficient is a matter to be determined by the surrogate. And In re Becker's Will, Sur., 31 N.Y.S.2d 482, 485, reached the same result when the language was "proper care, support and maintenance." In Holden v. Strong, 116 N.Y. 471, 22 N.E. 960, 961, "proper care, comfort and maintenance" was construed to mean "support and maintenance according to his [the life tenant's] condition in life." And in Rezzemini v. Brooks, 236 N.Y. 184, 140 N.E. 237, 239, it was directed that provision in the will for "the

proper support of my said son" should be construed in terms of the testatrix' "knowledge of the property owned by the son and the income derivable from the same, as well as his physical and mental condition."

 Hence we conclude that the will here involved permits of invasion of the principal only where it is necessary to maintain Miss MacDonald according to the standard of living to which she has been accustomed. The case must therefore be remanded to the Tax Court for findings and decision as to the value of the remainder to the charities when the power is construed in accordance with that definite standard.

Reversed and remanded.