Daniel J. SEUBERT, Administrator with Will Annexed, of the last Will and Testament of John W. Sadler, deceased, Plaintiff-Appellant,

v.

Frank J. SHAUGHNESSY, Individually and as Director of United States Internal Revenue for the District of Syracuse, N. Y., Defendant-Appellee.

No. 271, Docket 23929.

United States Court of Appeals Second Circuit.

Argued April 10, 1956.

Decided May 11, 1956.

---

Daniel J. Seubert, of Sadler, Seubert, Wilson & Driscoll, Syracuse, N. Y., for plaintiff-appellant.

Morton K. Rothschild, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., and Theodore F. Bowes, U. S. Atty. for Northern Dist. of N. Y., Syracuse, N. Y., on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and HINCKS and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

This is an appeal from an order of Judge Brennan dismissing the complaint and granting summary judgment for defendant in an action to recover payments of estate tax and interest amounting to about $51,000. The decedent, who died in 1950, bequeathed the residue of his estate to his sister for life, with the right to invade the principal "for any purpose which may add to her comfort or convenience," and at her death, the remainder to Syracuse University.[1] He also appointed her executrix.

The complaint alleged, *inter alia,* that Nettie M. Sadler, life tenant, was a maiden lady aged seventy-three at the time of decedent's death; that at that time she was a retired public school teacher, receiving retirement benefits, and for many years had lived with her brother, the decedent; that he knew when executing the will the frugality, thrift, habits, and mode of living to which she was accustomed; and that her activities for many years followed a definite routine, so that her expenses were capable of reasonably accurate and reliable calculations. It also alleged that she was in perfect health and possessed of independent means of her own, largely acquired from her modest income as a schoolteacher; that her anticipated annual income from all sources as so estimated as of the date of the death of the decedent exceeded the maximum anticipated amounts of any reasonable future expenses or requirements for her "comfort or convenience"; and that her own annual income also largely exceeded all anticipated expenses which, with any reasonable accuracy, could be foreseen as needed to support and maintain her on any standard comparable or equal to what she had been accustomed over a long period of years. There was a further allegation that Miss Sadler shared her brother's intention that the estate go eventually to Syracuse University.

At the time of filing the decedent's estate tax return Nettie M. Sadler had an independent income of her own of $2,300

---

1. Paragraph Fifth of the will reads as follows:

"All of the rest, residue and remainder of my estate, both real and personal, and wherever located, I give, devise and bequeath to my sister, Nettie M. Sadler, for and during the term of her natural life, with the right and privilege to invade the principal thereof for any purpose which may add to her comfort or convenience. At her death I direct that all of my estate, then remaining in her possession, shall be turned over to Syracuse University, and I hereby give, devise and bequeath all of the residue of my estate, at my sister's death, to said Syracuse University."

a year; her expenses were estimated at $2,400 a year; and the estate of the decedent yielded an income of more than $10,000 a year in addition to the use of decedent's home. The executrix had filed the return in 1951 and paid $896.25, the amount of tax shown on the return to be due. But she deducted from the gross estate about $185,000 as the value of the remainder bequeathed to Syracuse University. Attached to her return she filed an affidavit, in which she stated that she had "no intention of invading the principal of decedent's estate for any purpose whatsoever."

The Director of Internal Revenue subsequently disallowed the deduction of the value of the remainder interest; and Miss Sadler paid $49,876.26, the additional tax assessed, under protest and brought this suit for its recovery, plus

interest. She died while the action was pending, and the present plaintiff was substituted. At the trial, before the first of plaintiff's witnesses completed his testimony, Judge Brennan dismissed the complaint and entered summary judgment for the defendant.

The question presented is whether on the facts alleged in the complaint it must be ruled as a matter of law that the value of the charitable gift in remainder could not be definitely ascertained as of the date of testator's death, so that in consequence his estate cannot be allowed a deduction therefor under § 812(d) of the Internal Revenue Code of 1939, 26 U.S.C. § 812(d).[2] It is clear that the affidavit filed with the return is not a sufficient disclaimer to gain the deduction under the appropriate Treasury Regulation,[3] since it was not a com-

2. "§ 812. *Net estate*
  "For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—
    \*    \*    \*    \*    \*
  "(d) *Transfers for public, charitable, and religious uses.* The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return, or, in the case of a decedent dying on or before October 21, 1942, if the disclaimer is made prior to September 1, 1944) to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes; \*    \*    \*."
3. Treas.Reg. 105, promulgated under the Internal Revenue Code of 1939:
  "Sec. 81.44 [As amended by T.D. 5239, 1943 Cum.Bull. 1081, 1101, and by T.D. 5351, 1944 Cum.Bull. 579, 580]. *Transfers for public, charitable, religious, etc., uses*
    \*    \*    \*    \*    \*
  "The amount of the bequest, legacy, de-

vise, or transfer, for which a deduction is allowable under the provisions of this section, includes the interest which falls into any such bequest, legacy, devise, or transfer, as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made \*    \*    \* prior to the date prescribed for the filing of the estate tax return in the case of a decedent dying after October 21, 1942. The disclaimer must not only be made \*    \*    \* prior to the date prescribed for the filing of the estate tax return (including such date as may be prescribed in an extension of time granted for the filing of such return) in the case of a decedent dying after October 21, 1942, but must be irrevocable at the time the deduction is allowed. Ordinarily, a disclaimer made by a person not under any legal disability will be considered irrevocable when filed with the probate court. A disclaimer is a complete and unqualified refusal to accept the rights to which one is entitled. Thus, if the beneficiary uses these rights for his own purposes, as by receiving a consideration for his formal disclaimer, he has not refused the rights to which he was entitled. There can be no disclaimer after an acceptance of such rights, expressly or impliedly. \*    \*    \*
  "If a trust is created for both a charitable and a private purpose, deduction may be taken of the value of the beneficial interest in favor of the former only insofar as such interest is presently as-

plete and unqualified refusal to accept the right to invade corpus; nor was it irrevocable and filed with the probate court. But the filing of an appropriate disclaimer is not the exclusive means provided by the statute and regulations to obtain the deduction if the value of the charitable remainder can be shown to be definitely ascertainable. Here, however, the wording of the bequest makes it clear that there is no objective limitation of the power to invade corpus; and hence the value of the remainder is not ascertainable even if all other allegations of the complaint be admitted. Merchants Nat. Bank of Boston v. C. I. R., 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259; De Castro's Estate v. C. I. R., 2 Cir., 155 F.2d 254, certiorari denied 329 U.S. 727, 67 S.Ct. 82, 91 L.Ed. 630; Third Nat. Bank & Trust Co. of Springfield v. United States, 1 Cir., 228 F.2d 772. See also C. I. R. v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246.

█ Plaintiff sought to introduce evidence of Miss Sadler's long-accustomed frugality and of her brother's knowledge thereof, in order to show his intent in giving her the power to invade and to demonstrate that the chance of actual invasion was negligible. But proof of extrinsic circumstances cannot supply the necessary element of ascertainability if the wording of the will itself does not furnish the basis for an objective standard. See Merchants Nat. Bank of Boston v. C. I. R., supra, 320 U.S. 256, 261, 64 S.Ct. 108, 88 L.Ed. 35; Henslee v. Union Planters Nat. Bank & Trust Co.,

supra, 335 U.S. 595, 599, 69 S.Ct. 290, 93 L.Ed. 259. "Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. Cf. Bank of America Nat. Trust & Savings Ass'n v. Commissioner, 9 Cir., 126 F.2d 48." Merchants Nat. Bank of Boston v. C. I. R., supra, 320 U.S. 256, 261, 64 S.Ct. 108, 111.

█ Plaintiff cites a number of cases wherein a sufficient objective standard has been found to support the deduction; e. g., Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Lincoln Rochester Trust Co. v. McGowan, 2 Cir., 217 F.2d 287; Blodget v. Delaney, 1 Cir., 201 F.2d 589; Lincoln Rochester Trust Co. v. C. I. R., 2 Cir., 181 F.2d 424; Berry v. Kuhl, 7 Cir., 174 F.2d 565; C. I. R. v. Robertson's Estate, 4 Cir., 141 F.2d 855. But none of these can help the plaintiff. For here the life tenant herself is given the broad power of invasion for "any purpose which may add" to her "comfort or convenience." Although the words "comfort or convenience" may conceivably import the standard of her accustomed way of life, the right to invade for "any purpose which may add" thereto fails to bind her to that norm, but rather authorizes her to go beyond it to an undetermined extent.

certainable, and hence severable from the interest in favor of the private use. * * * "

"Sec. 81.46. *Conditional bequests* * * * * *

"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or

purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power."

Admittedly the real probabilities of invasion of corpus here were not great, and in fact no such invasion by Miss Sadler took place during her lifetime. That is not to say, however, that there was anything in the intent of the testator, as expressed in the language of the will, to prevent her from invading principal for any of a large number of objects which might enhance her comfort or convenience. Whatever may have been the testator's expectations of the likelihood of his sister's so doing, he gave her *power* to do so practically at her unlimited discretion. Hence we must conclude that the "standard" set by the testator to guide the life tenant in the exercise of her discretionary power to invade corpus rendered it impossible to make a "highly reliable appraisal" of the amounts the charities would eventually receive, as required by the rule of Merchants Nat. Bank of Boston v. C. I. R., supra, 320 U.S. 256, 261, 64 S.Ct. 108, 88 L.Ed. 35.

It may well be that a more realistic rule for determining eligibility for the charitable deduction, which does not place such great emphasis upon subtle distinctions in the language of the will, may be devised. See the concurring opinion of Chief Judge Magruder in Blodget v. Delaney, supra, 1 Cir., 201 F. 2d 589, 594. But the test that we must use here is that laid down by the Supreme Court, which disregards extrinsic circumstances when the will itself furnishes no definite standard of guidance.

◼ Plaintiff further objects to alleged irregularities in the dismissal of the complaint and in the granting of summary judgment after part of the testimony of plaintiff's first witness had been heard. But the question presented was purely one of law and was argued at some length by plaintiff's counsel. There was no prejudice to plaintiff's rights, and the action of Judge Brennan was proper in the light of the clear deficiency of the complaint.

Affirmed.