**MERCANTILE–SAFE DEPOSIT & TRUST COMPANY, Executor of the Estate of Raymond D. Havens**

v.

**UNITED STATES of America.**

**Civ. No. 10915.**

United States District Court
D. Maryland.

April 10, 1959.

---

Robert W. Williams, Ober, Williams, Grimes & Stinson, Baltimore, Md., for plaintiff.

Leon H. A. Pierson, U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., and Garry A. Pearson, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

THOMSEN, Chief Judge.

In this action to recover estate taxes alleged to have been erroneously and illegally collected the issue is whether, in computing the tax, the entire residuary estate given in trust by Dr. Havens' will was deductible under sec. 812(d), I.R.C. 1939, 26 U.S.C.A. § 812(d).[1] The government concedes that the remainder interest in the residuary trust is deductible, since it was given to the Johns Hopkins University; but the government contends that the value of a life estate therein for the life of the testator's sister is not deductible. The will provided that the trustee shall pay to or for the benefit of the sister only so much of the net income as the trustee, in its sole discretion, considering all assets owned by her and any income received from any other source, deems necessary and proper for her reasonable living expenses, comfort, maintenance, and general welfare. The executor contends that under the terms of the will and the circumstances existing at the time of the testator's death, it was apparent then (as it is now) that none of the income of the residuary trust would be paid to or used for the benefit of the sister, but would be accumulated and would pass to the University at the sister's death.

### Findings of Fact

The testator, Dr. Raymond D. Havens, a bachelor, had been a professor in the English department at the University. He died on August 11, 1954, a resident of Baltimore City, having executed a will in February 1953 and a codicil thereto in March 1954, by which he disposed of a gross estate of some $338,000. He was survived by a sister, Ruth M. Havens, who was then in a nursing home because of advanced senility, although she was only sixty-five. Miss Havens had an income of over $10,000 a year and owned or had the right to use some $135,000 of principal. Another sister had recently died, and a de-

---

1. Dr. Havens died on August 11, 1954, five days before the I.R.C.1954 took effect. 26 U.S.C.A. § 7851.

ceased brother had left a widow and one daughter, well provided for. There was no other family.

Dr. Havens appointed plaintiff to be his executor and trustee. After a number of specific bequests, he disposed of his estate as follows:

"*Eighth*: All the rest, residue and remainder of my estate, both real and personal and wheresoever situate, I give to my Trustee hereinafter named, *In Trust Nevertheless,* to hold, manage, invest and reinvest the same and pay to my sister, Ruth Mack Havens so much of the net income as in its sole discretion it deems necessary and proper for her reasonable living expenses, comfort, maintenance and general welfare. My Trustee in exercising this discretion shall, however, take into consideration all assets owned by her and any income received from any other source of which my Trustee may have knowledge. It is my desire that the discretionary power given to my Trustee be liberally construed. Any net income not so required shall be accumulated and added to the principal of the trust from time to time. Upon the death of my sister, or upon my death if she shall not survive me, I give the principal of said trust (together with any accumulated income added thereto), or the residue of my estate (as the case may be), to the Johns Hopkins University of the City of Baltimore, Maryland, for its library. It is my wish that the principal fund shall be kept invested by said University and the income therefrom expended for the purchase and cataloging of books in the field of the humanities, with the explicit direction that this income shall be used as an addition to and not as a substitute for the money normally allotted to this purpose.

"During the illness or incapacity of my sister, my Trustee is hereby expressly authorized to make any payments of income due or authorized hereunder to her duly constituted guardian or committee, or to such other person or persons as in the sole discretion of the Trustee may be applied by such person or persons to the support, maintenance, care and general welfare of my sister, or, if said Trustee deem best, to itself apply such payments directly to her support, maintenance, care and general welfare without being required under any such circumstances to account therefor to any Court."

In the estate tax return the executor claimed the value of the entire residuary estate, some $315,000, as a charitable bequest. In a statement made part of the return the executor said:

"Miss Havens' income is more than sufficient for her needs, and if it should ever become insufficient, the principal of a substantial fund held by Mercantile-Safe Deposit & Trust Company, as Trustee under a revocable Deed of Trust created by her, could be drawn on for the deficiency. Thus, considering her age of 66 years, it is apparent that none of the income of this decedent's estate will be used for her and, therefore, the entire trust estate, together with income accumulated thereon, will pass, at Miss Havens' death, to The Johns Hopkins University, a charitable organization."

The District Director notified the executor that the deduction for charitable, etc. bequests should be reduced by $111,483.24. We are concerned at this time with the determination by the Service that the bequest of the residuary estate to the Johns Hopkins University should be allowed as a charitable deduction only after reducing the fair market value of such residuary estate by $102,657.14, the value of a life estate therein for the life of the testator's sister. The District Director claimed a tax deficiency of $8,488.90. The executor paid that amount plus $1,146 interest on February 11, 1958, claimed a refund of $9,634.90 on

February 25, 1958, and, no action having been taken on its claim, filed this suit more than six months later.

At the time of Dr. Havens' death, which is the controlling date in this case, his sister was in a nursing home at Lutherville, Maryland. A month or two before, she had executed a revocable trust agreement, by which she had conveyed to plaintiff, as her trustee, certain stocks, bonds and cash valued at $118,-670.70, in trust to pay her the net income and to pay to her out of the principal such amounts as she might request and in the judgment of the trustee might be necessary or desirable for her care, maintenance and support. Provision was also made for the disposition of the trust property after the grantor's death, and, in the event of her incompetence or disability, to make payment of the income and payments out of the principal, in so far as the income is insufficient, for her comfort, maintenance and support. The income from the trust so created by her was estimated by the trustee at $3,730 per year. Miss Havens, who had been a school teacher in New York State, also had a pension of over $2,000 a year, income of more than $3,000 a year under the will of a deceased brother, Samuel M. Havens, and other income from insurance contracts and the rent of her former home in New Paltz, New York.

Nelson S. Winter, the vice-president of plaintiff in charge of the estate of Dr. Havens, the trust created by his sister, and an agency created by her, estimated shortly after the death of Dr. Havens that the sister's income would be about $10,753 per year and that her expenses would not exceed that amount. He testified, without objection, that it was his opinion at that time that it would not be necessary to use any part of the income from the trust under Dr. Havens' will for the support of the sister. In forming this opinion, Winter considered her age, the size of her personal estate, her annual income from all sources and what expenses could be expected in view of her present and previous mode of living. He testified that "we" considered that Dr. Havens had in mind and had spelled out in his will that the trustee could not use any part of the income from his estate for the support of his sister until "we had not only used all of the sister's income but had exhausted her own assets" for that purpose. He testified that this was and is the practice of the plaintiff trust company, based upon its understanding of the Maryland law as set out in the Washington College case, which is discussed below. He further testified that this conclusion, in his opinion, is supported by the provision in the will that the trustee shall pay to the sister only so much of the net income as in its sole discretion "it deems *necessary* and proper for her reasonable living expenses, comfort, maintenance and general welfare" and by the provision that "net income not so *required* shall be accumulated and added to the principal of the trust from time to time". The italics represent words emphasized by the witness in his testimony. The witness further stated that, in his opinion, the provision in the will "it is my desire that the discretionary power given to my trustee be liberally construed" means that the trustee should be liberal in paying out income *after* the condition precedent to any payment has been satisfied. Construing the will in that way, Winter was firmly of the opinion that they would never have to use for the support of the sister any part of the income from the testamentary trust. Even if the will should be otherwise construed, he testified that "in so far as we can reasonably anticipate, her income would have been sufficient".

Plaintiff also offered evidence to show that the sister's income has in fact exceeded her expenses and that it has not been necessary either to invade her principal or to use any part of the income from Dr. Havens' trust for her benefit. All of the income from the testamentary trust has been accumulated. The sister's senility has progressed; she has been adjudicated incompetent, and is now in the Sheppard and Enoch Pratt

Hospital, where her total expenses are less than they were when she was at the nursing home. The government objected to that evidence. Although it is probably admissible on the question of the reasonableness of the estimate made by Winter shortly after Dr. Havens' death, Bowers v. South Carolina Nat. Bank of Greenville, 4 Cir., 228 F.2d 4; Commissioner of Internal Revenue v. Robertson's Estate, 4 Cir., 141 F.2d 855; Lincoln Rochester Trust Co. v. McGowan, 2 Cir., 217 F.2d 287, 293, I have made the following findings of fact without considering that evidence.

I find as a fact that at the time of the death of Dr. Havens the possibility that his sister's *income and principal* would not be sufficient to care for her for the balance of her life was so remote as to be negligible. On the other hand, I find that it was doubtful whether her *income* alone would be sufficient to care for her for the balance of her life. I further find that the trustee, in good faith, believes that it is obligated under Dr. Havens' will to exhaust the sister's principal as well as her income before any income from the trust created by his will can be used for her benefit.

### The Statute, Regulations and Controlling Decisions

The applicable statute and regulations are set out, and the controlling federal and state decisions are fully discussed, in Mercantile-Safe Deposit, etc. v. United States, D.C.Md., 141 F.Supp. 546, at pages 549–553, hereinafter called the Weglein case. It is sufficient to note here the following principle, stated by the Fourth Circuit in Bowers v. South Carolina National Bank of Greenville, 228 F.2d 4, at page 8: "The rule of this case has been given expression in § 81.46 of the Regulations where it is said that a deduction for a conditional bequest to charity is not allowable *unless the possibility that the charity will not take is so remote as to be negligible*—and conversely, that if an estate is vested in charity at the decedent's death and would be defeated by the happening of some

event which then *appeared to have been highly improbable*, the deduction is allowable."

The facts of this case are different from the facts of the Weglien case, but the controlling principle is the same.

### Discussion

Is the possibility that the University will not ultimately receive the entire trust estate under the will—income as well as corpus—so remote as to be negligible?

The will permits the trustee to use so much of the income as it deems necessary and proper for her support, after taking into consideration all assets owned by her and any income received from any other source. The will also provides that only so much of the income shall be used as the trustee in its sole discretion deems necessary and proper. The net income not so required must be accumulated and added to the principal of the trust.

The extent of the interest of a beneficiary of a trust depends upon the intention manifested by the settlor or the testator. "It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. The inference is that he is so entitled." Restatement of Trusts, sec. 128; Offutt v. Offutt, 204 Md. 101, 110, 102 A.2d 554; Scott on Trusts, 2nd ed., sec. 128.4.

The exact question presented by this case has not been decided in any case to which I have been referred or which I have found. The Court of Appeals of Maryland has considered the question whether a beneficiary should be required to exhaust her own corpus before invading the corpus of a trust in which she has a life interest. The court held that when necessity had to be shown, "the beneficiary has not made out such a case of need for living expenses as to justify invasion of the corpus of the trust estate, while she has ample independent means from which those needs can be met." Board of Visitors and Governors of Washington College v. Safe Deposit

& Trust Co., 186 Md. 89, 97, 46 A.2d 280, 284.

█ It is not certain whether the Maryland court would require a beneficiary to exhaust her own principal before being entitled to receive income under a testamentary trust which permits the use of income for her support conditioned upon need. The answer to that question in any case would turn on the intention of the testator. In the instant case the question is not baldly presented; the discretion given to the trustee by the testator must also be considered. The Maryland law is clear that a court of equity ordinarily will not interfere with a trustee's exercise of a personal discretionary power. "Thus, where a personal power of discretion is vested in the trustees, the Chancellor, even after an assumption of jurisdiction, will require a showing of abuse of discretion before substituting his judgment for that of the trustees, even though he might control their imperative, impersonal, or ministerial powers." Offutt v. Offutt, 204 Md. at page 109, 102 A.2d at page 558. See also Marburg v. Safe Deposit & Tr. Co., 177 Md. 165, 9 A.2d 222; Scott on Trusts, 2nd ed., sec. 128.4.

The vice-president of the trustee has stated that it intends to exercise its discretion—in accordance with its understanding of the intention of the testator and of the Maryland law—to use the principal of the trust created by the sister for her support before using for that purpose any part of the income of the trust created by the will of Dr. Havens. Plaintiff trust company is also trustee of the trust created by the sister; it was her agent at the time of Dr. Havens' death, and is now her committee. Its vice-president, Winter, talked to both Dr. Havens and his sister about the trusts shortly before Dr. Havens' death. Under those circumstances it is unlikely that a Maryland court would hold that the trustee had abused its discretion in refusing to make payments to the sister from the trust under Dr. Havens' will so long as she has other assets sufficient to meet her needs. The position taken by the trustee is supported by language in the will and by the ratio decidendi of the Washington College case.

The possibility that any of the income from the trust under the will of Dr. Havens will be used for the benefit of his sister is so remote as to be negligible; it is highly probable that the Johns Hopkins University will ultimately receive the entire trust property, income as well as principal. There is no "uncertainty appreciably greater than the general uncertainty that attends human affairs". Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647; Bowers v. South Carolina National Bank of Greenville, 4 Cir., 228 F.2d at page 7.

### Conclusion

I conclude that in computing the estate tax the executor was entitled to deduct the entire residuary estate as a charitable bequest; that the tax was improperly or illegally assessed and collected; and that plaintiff is entitled to judgment in the amount of $9,634.90, with interest as provided by law.