Willard G. McGRAW and Virginia National Bank (Successor by consolidation to Peoples National Bank of Charlottesville, Virginia), as executors of the Estate of Carolyn M. Barbour, Plaintiffs,.

v.

UNITED STATES of America, Defendant.

Civ. A. No. 108.

United States District Court
W. D. Virginia,
at Charlottesville.

April 9, 1964.

Joseph W. Richmond, Charlottesville, Va., Frederick A. Ballard, Kilpatrick, Ballard & Beasley, Washington, D. C., for plaintiffs.

Thomas B. Mason, U. S. Atty., Roanoke, Va., C. Moxley Featherston, George A. Hrdlicka, Herbert Odell, Attys., Dept. of Justice, Washington, D. C., for defendant.

MICHIE, District Judge.

This is an action by the executors of the estate of Carolyn M. Barbour for the refund of $17,521.51 paid in December 1961 as part of decedent's federal estate tax. No charitable deduction was taken on the original estate tax return with respect to that portion of decedent's estate bequeathed as a remainder interest to certain charitable organizations named in the will. In early 1962 the plaintiffs filed a claim for refund for the above amount, determining that figure from what the plaintiffs calculated to be the value of the charitable remainder. This claim for refund was subsequently disallowed by the Internal Revenue Service.

Both parties filed motions for judgment on the pleadings. As a result of a recent hearing it appears that the facts are not materially in dispute. The government, however, vigorously disputes the relevance of certain of the facts.

The testatrix, Carolyn M. Barbour, died September 13, 1960, providing in her will, executed on November 28, 1959, that the trustees (plaintiffs in this case) pay the income or principal of her estate to three life beneficiaries. Any excess income was to be paid to the Southern Baptist Board of Missions.

The plaintiffs contend that a deduction for the charitable remainder can be readily calculated as of the time of the testatrix's death since the possibility that the charity will not take is so remote as to be negligible. Implied in this argument is the assumption that the language in the will provides a readily ascertainable standard of objectivity regarding the invasion of the corpus so that the value of the remainder at the time of the testatrix's death may be ascertained with reasonable certainty.

The government contends that the charitable remainder cannot be readily determined at the time of the testatrix's death. It argues that the language of the will does not set out a sufficiently objective standard for invasion of the trust corpus to provide a basis for ascertaining the value of the charitable remainder. The government also contends that the facts surrounding the possibility of invasion cannot be considered in determining the remainder value unless the first test of an objective standard on the face of the will is met.

The trust was to terminate upon the death of the life beneficiaries. The remainder interests were to go in two equal shares to named charities and to specified relatives. At the death of the testatrix the three life beneficiaries remained alive. Two were devised life incomes of $50 per month. Those do not involve any problem since the life expectancies and consequently the probable value of the life estates and the remainders, can readily be determined. The third beneficiary, Martha E. Johnson, was not as narrowly provided for.

The terms of the will directed the trustee:

"To use and expend so much of the net income, and if that be insufficient, so much of the principal of the Trust Estate as my Trustees, in their sole discretion, deem necessary and desirable for the comfortable support, maintenance, medical care, welfare and happiness of my dear sister, Martha E. Johnson, who is an invalid and wholly dependent on me, for and during her lifetime. It is my wish to make every provision for her and my Trustees are requested and authorized in the administration of this Trust to make her care their primary purpose and attention."

In this case, as in many of those cited in the briefs, the facts are most favorable to the plaintiffs. The life beneficiary was old (85), an invalid, and resided in a nursing home until hospitalized for her terminal illness. At the time of testatrix's death there was no reasonable possibility that the beneficiary would ever be able to leave the nursing home. The rates fixed by the nursing home therefore provide an accurate figure from which to determine the dollar cost of her support. This figure was one-half of the income of the trust at the time of decedent's demise. Thus the facts would seem to demonstrate that the possibility of invasion of the corpus was so remote as to be negligible.

However, I am unable to get to such a factual determination since the Supreme Court has clearly held that an objective standard, *stated on the face of the instrument,* is a prerequisite to any allowance of a deduction for the value of a charitable remainder.

In Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), the court set out the necessity of a sufficiently definite standard of invasion prescribed in the will in order to permit a valuation of the charitable remainder. In that case the language of the will establishing the trust for the life beneficiary authorized the trustees to invade the principal for any amount "necessary to suitably maintain her in as much comfort as she now enjoys". 279 U.S. at page 154, 49 S.Ct. at page 291, 73 L.Ed. 647. The court said of that language:

"The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion." 279 U.S. at page 154, 49 S.Ct. at page 291, 73 L.Ed. 647.

Since the standard set up by the terms of the will provided some objective measure, the facts then could be looked to for the valuation of the charitable remainder.

The same question came again before the court in Merchants National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943). The facts are similar in that a life beneficiary was designated with remainder over to charity. Permission to invade the corpus for the benefit of the life beneficiary by the trustees as set out by the will took the following form:

" ' * * * at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said

wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife, May L. Field, my said Trustee shall exercise its discretion with liberality to my said wife and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust.' " 320 U.S. at pages 257–258, 64 S.Ct. at page 110, 88 L.Ed. 35.

Interpreting the meaning of the phrase "objective standard" as used in the Ithaca case, the court held the foregoing language too broad and indefinite to establish a readily ascertainable standard.

"Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable.

\* \* \* \* \* \*

"'The salient fact is that the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction. This is not a 'standard \* \* \* fixed in fact and capable of being stated in definite terms of money'. Cf. Ithaca Trust Co. v. United States, supra. Introducing the element of the widow's *happiness* and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial." 320 U.S. at pages 261–263, 64 S.Ct. at pages 111, 112, 88 L.Ed. 35. (Emphasis supplied)

However, Justices Douglas and Jackson dissenting said:

"The discretion to pay to the wife such principal amounts as the trustee deems proper for her 'happiness' introduces of course an element of uncertainty beyond that which existed in the Ithaca Trust Co. case. There the trustee only had authority to withdraw from the principal and pay to the wife a sum 'necessary to suitably maintain her in as much comfort as she now enjoys.' But the frugality and conservatism of this New England corporate trustee, the habits and temperament of this sixty-seven year old lady, her scale of living, the nature of the investments—these facts might well make certain what on the face of the will might appear quite uncertain. We should let that factual determination of the Tax Court stand, even though we would decide differently were we the triers of fact."

Citing the Merchants Bank case, the Supreme Court in Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949) reasserted the requirements with respect to the necessary standard in such cases. The terms of the will establishing the trust for the life beneficiary were as follows:

"In addition to this amount my said executors and trustees are authorized and empowered to use and expend in their discretion any portion of my estate, either income or principal, for the pleasure, comfort and welfare of my mother.

"The first object to be accomplished in the administration and management of my estate and this trust is to take care of and provide for my mother in such manner as she may desire and my executors and trustees are fully authorized and likewise directed to manage my estate primarily for this purpose." 335 U.S. at page 596, 69 S.Ct. at page 291, 93 L.Ed. 259.

From this language the court held the standard too broad for a determination of value of the charitable remainder.

"It is apparent on the face of the complaint that this testator's will did not limit the trustees' disbursements to conformity with some ready standard * * *." 335 U.S. at page 598, 69 S.Ct. at page 292, 93 L.Ed. 259.

I feel bound by the clear language of these cases and consider them to be controlling in the case before me. In the Merchants Bank case the court specifically deals with the very testamentary word that is present in the Barbour will— "happiness". The court clearly notes that that term introduces elements of speculation too broad to permit reasonable certainty in the calculation of the charitable remainder. In the instant case not only the word "happiness" is found as in the Merchants Bank case but also the instruction to the trustees to make the care of the life beneficiary "primary". This primacy of care includes the beneficiary's happiness—a very subjective requirement. The Supreme Court cases cited above deal precisely with these points.

Considerable argument is made by plaintiffs that cases in the Fourth Circuit do not follow the rigid requirement that unless there is a definite objective standard provided by the will an examination of the factual circumstances is precluded. Plaintiff contends that the standard in the Barbour will is not incapable of objective determination and that happiness is not a vague nor speculative criterion. They regard the question before me as one of fact.

The two cases relied on most heavily to support the plaintiffs can be distinguished. In Bowers v. South Carolina National Bank of Greenville, 4 Cir., 228 F.2d 4 (1955), the terms of the will setting out the standard are definite and capable of determination. Specific sums are designated to life beneficiaries and the cost of upkeep of realty is not subjective but objective. Therefore, a factual analysis is in order since the standard permits

a view in that direction. The facts supported the position that invasion was remote or negligible.

In Commissioner of Internal Revenue v. Robertson's Estate, 141 F.2d 855 (1944), the second of two cases relied on by plaintiffs, the will provided for a life beneficiary with remainder to certain charities but permitted invasion of the corpus for the "best interests" of the life beneficiary. Despite this rather vague standard, Judge Soper upheld the Board of Tax Appeals' findings for the taxpayer. He affirmed its holding that "the possibility that the charitable bequests would fail or be diminished was so remote as to be nil". 141 F.2d at page 858. Citing the Merchants Bank case, Judge Soper noted the "happiness" ruling but apparently felt that it was a much vaguer standard than "best interests." For reasons of public policy, to implement what he believed to be the Congressional intent and with the desire to give weight to the Tax Court's findings, the decision of the Tax Court was affirmed. This holding of the Fourth Circuit would trouble me, despite the Supreme Court cases, if it were the last word of that court.

However, two more recent cases arising in the Fourth Circuit follow the law as clearly set out in the above discussed Supreme Court opinions. In Mercantile-Safe Deposit, & Trust Co. v. United States, 141 F.Supp. 546 (1956), Judge Thomsen in construing in favor of the taxpayer the words "reasonable and comfortable support", and "welfare and comfort", notes a clear distinction between these and the term "happiness", implying thereby that "happiness" does not permit, as a standard fixed in fact, a valuation of any charitable remainder. Authority for this distinction was cited as Blodget v. Delaney, 201 F.2d 589 (1st Cir. 1953) where the court, in commenting on the "happiness" standard in the Merchants Bank case, said it had "sweeping subjective connotations".

But the real authority to overcome the Robertson's Estate case in the Fourth Circuit is Kline v. United States, D C.,

202 F.Supp. 849 (1962), affirmed per curiam, 313 F.2d 633 (4th Cir. 1963). The issue was the same as in the case at bar. A life beneficiary intervened before the remainder to charity. The language of the testator directed the trustees to invade the corpus "to the same generous extent that I, if living, could do * * *." 202 F.Supp. at page 850. Judge Charles Paul interpreted this language as follows:

> "The words 'to the same generous extent that I, if living, could do * * *', modifying the trust obligations for maintenance and support, speak of the future, not the past. They comport change, not simply a continuance of an established mode of living and the following of a custom of the testatrix to contribute toward it. These words amount to a direction to the trustees to apply a *subjective test of desire, not an objective test of need*." 202 F.Supp. at page 852. (Emphasis supplied)

The distinction of a subjective test of desire as opposed to the objective test of need is validly applied in the case of "happiness" as a standard. "Happiness" is by nature subjective. It brings into "the calculation [of the charitable remainder] elements of speculation too large to be overcome". 320 U.S. at page 263, 64 S.Ct. at page 112, 88 L.Ed. 35. (Words in brackets supplied.) Happiness does not provide a "standard fixed in fact and capable of being stated in definite terms of money." 279 U.S. at page 154, 49 S.Ct. at page 291, 73 L.Ed. 647.

Furthermore, Judge Paul, in the Appendix he attached to the Kline opinion, questions the validity of Commissioner of Internal Revenue v. Robertson's Estate. See 202 F.Supp. at page 854. The Court of Appeals for the Fourth Circuit affirmed this decision *per curiam* for the reasons set out in Judge Paul's opinion, a portion of which is cited above.

Finding the cases by the United States Supreme Court cited above in point and binding and finding the latest cases in the Fourth Circuit in accord with them, I therefore grant the defendant's motion for judgment on the pleadings.

I do this with some regret for to my mind the reasoning of the dissenting Supreme Court Justices (Douglas and Jackson) in Merchants National Bank of Boston v. Commissioner of Internal Revenue, supra, is more convincing than that of the prevailing opinion. But I feel bound to follow a clear ruling of the Supreme Court even though I personally feel the dissenting opinion to be more soundly based.