**MERCANTILE–SAFE DEPOSIT AND TRUST COMPANY, Executor under the Last Will and Testament of George F. Sargent**

v.

**UNITED STATES of America.**
Civ. No. 15254.

United States District Court
D. Maryland.
March 7, 1966.

Gordon G. Power and Power & Mosner, Towson, Md., for plaintiff.

Moshe Schuldinger, Atty., Dept. of Justice, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., and David A. Wilson, Jr., Atty., Dept. of Justice, Washington, D. C., and Thomas J. Kenney, U. S. Atty., and Robert W. Kernan, First Asst. U. S. Atty., Baltimore, Md., on brief), for defendant.

THOMSEN, Chief Judge.

In this action to recover estate taxes alleged to have been erroneously and illegally collected, the issue is whether the value of the remainder interest to charity in the residuary trust created by the will of Dr. George F. Sargent was deductible under sec. 2055 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2055. More specifically, the questions presented are: (1) whether the will provides a sufficiently definite standard limiting the extent of possible invasion for the benefit of non-charitable interests so that the value of the charitable remainder was "presently ascertainable" at the time of the testator's death; and if so, (2) whether the possibility that the charity would not take was so remote as to be negligible. These questions must be considered both with respect (A) to the powers given the trustee during the life of the widow, and (B) to the powers given the trustee after her death in connection with annuities of $1,000 each provided for two servants, William F. Wiggins and Eva Wiggins. Plaintiff cannot recover unless both questions are answered "yes".[1]

The material portions of Dr. Sargent's will are set out in the margin.[2] A sum-

---

1. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Merchants Nat. Bank v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Kline v. United States, N.D.Va., 202 F.Supp. 849 (1962), affirmed per curiam, 4 Cir., 313 F.2d 633 (1963); McGraw v. United States, W.D. Va., 229 F.Supp. 118 (1964); Newton Trust Co. v. Commissioner, 1 Cir., 160 F.2d 175 (1947); Blodget v. Delaney, 1 Cir., 201 F.2d 589 (1953); Lincoln Rochester Trust Co. v. Commissioner, 2 Cir., 181 F.2d 424 (1950); Seubert v. Shaughnessy, 2 Cir., 233 F.2d 134 (1956); Internal Revenue Bulletin 54–285 (IRB 1954–29, P.H.Fed.Tax Serv., sec. 120,555.1); Lowndes and Kramer, Federal Estate and Gift Taxes, 2d ed., pp. 364–366; Paul, Federal Estate and Gift Taxation, 1946 Supp., pp. 430–437; Surrey and Warren, Federal Estate and Gift Taxation, 1961 ed., pp. 717–719.

Insofar as an early case, Commissioner v. Robertson's Estate, 4 Cir., 141 F.2d 855 (1944), did not recognize the first requirement, it has been overruled by Henslee v. Union Planters Bank, supra, and by Kline v. United States, supra. See State Street Bank and Trust Company v. United States, 1 Cir., 313 F.2d 29, 30, n. 2 (1963); McGraw v. United States, supra, and the texts cited above. The first requirement was recognized in Bowers v. South Carolina National Bank of Greenville, 4 Cir., 228 F.2d 4, 7, 8 (1955), quoting from Ithaca Trust Co. v. United States, supra, and in Mercantile-Safe Deposit and Trust Co. v. United States, D. Md., 141 F.Supp. 546 (1956), albeit not so clearly as it might have been, since the principal contest in both of those cases was over the second question, whether the possibility that charity would not take was so remote as to be negligible.

2. After bequeathing his personal effects, etc., to his widow, the testator, by Item Third of his will, devised and bequeathed the residue of his estate to plaintiff trust company, as trustee, to invest and reinvest and to

"(a) * * * apply the net income therefrom, accounting from the date of my death, for the maintenance, support, comfort and welfare of my wife, Cora McCabe Sargent, during her life. I hereby direct that my said wife shall not have the power to charge, alienate or encumber the income or any principal payments hereby provided for her, and

mary of the provisions material to each of the questions presented is included in the discussion of the particular question.

further that her interest in this trust shall not be taken in execution or attachment.

"(b) This provision of my will shall not prevent, nor shall any provision of my Will prevent my said Trustee, in the absolute discretion of said Trustee, and any successor thereto in case my said wife shall become incapacitated, from applying the whole or any part of the income and/or principal which otherwise would be payable to or for her benefit under this Will directly to her support and maintenance, and full power and authority is hereby conferred on my said Trustee so to do whenever in its absolute discretion and judgment my said wife is or continues to be, for any cause, incapacitated, or whenever in its absolute discretion and judgment the welfare of my said wife would be better served and promoted by applying the income or other benefits from this Trust to her support and maintenance instead of paying the same into her own hands. However, nothing herein contained shall prevent my said Trustee from depositing the income or other payments which may be due my said wife from time to time in some bank or banks of her selection, or from directly paying the bills for my said wife, all of which my said Trustee is authorized to do in its absolute judgment and discretion.

"(c) I have heretofore made provision, through insurance on my life and otherwise, for substantial annuities which will be paid to my wife, Cora McCabe Sargent, in monthly installments, so long as she shall live, but, if it should transpire that said annuities and the income from the trust hereby created, taking into consideration my wife's income from all sources and property owned by her, is insufficient to comfortably maintain my said wife and to provide her with the best medical, hospital and nursing care or treatment in case of sickness, then I will and direct that my said Trustee, from time to time and whenever it be deemed desirable so to do, in its absolute discretion, shall add to the income to be paid to or for the benefit of my said wife and shall apply to her support, maintenance, comfort and general well being such part of the principal of the trust estate as, in the absolute discretion of said Trustee,

Dr. Sargent died in June 1959, survived by his wife, who was eighty-one years old, and by Mr. and Mrs. Wiggins. Mrs. Sargent died in March 1963, William F.

shall be necessary to supply such deficiency.

"*FOURTH*: Upon the death of my said wife, Cora McCabe Sargent, or upon my death should she predecease me, my Trustee shall continue to hold the corpus and add thereto any accumulated or accrued income thereon, as well as income thereafter collected during the existence of the trust, for the following uses and purposes:

" * * *

"(k) To pay out of the principal of the trust estate to our faithful servants, William F. Wiggins and Eva Wiggins, his wife, each an annuity of One Thousand Dollars ($1,000.00) per annum to be paid to them respectively in semiannual installments for ten years accounting from the date of the death of the survivor of myself and my said wife, upon the following conditions * * [including a provision that if either (or both) of them should die before the expiration of the ten year period, his or her annuity should cease] * * * In addition to the annuities herein provided and so long as the trust estate shall otherwise continue, the Trustee is authorized in its absolute discretion to use such part of the principal of the trust estate as may be necessary in its discretion to alleviate any financial emergency resulting to either William F. Wiggins or Eva Wiggins.

"(1) I confer upon my said Trustee full power and authority to determine from time to time the amounts which may be payable under this Fourth Item of my Will and its determination shall be final and binding on all persons interested in my estate and shall not be impeached except for proved bad faith or fraud.

"*FIFTH:* Upon the death of the last survivor among Creon J. Cook, George H. Sargent, Leila Post McCabe, my said wife, Cora McCabe Sargent, and myself and upon the termination or expiration of the annuities to William F. Wiggins and Eva Wiggins respectively, whichever event shall last occur, the trust estate hereby created shall cease and determine and the corpus thereof, together with all accrued and accumulated income shall be paid over and delivered free, clear and discharged of all trust to Home For Incurables of Baltimore City * * *."

Wiggins died in August 1959; Eva Wiggins is still living. At no time after Dr. Sargent's death were any payments made either to Mrs. Sargent or to Mr. or Mrs. Wiggins out of the principal of the trust.

The estate tax return was filed in August 1960. It showed a gross estate of $951,521.96, a taxable estate of $224,405.87, after deductions which included the charitable remainder valued at $634,575.35, and an estate tax liability of $54,796.02. Upon audit, a deficiency of $192,842.82 was assessed and paid in January 1963, together with interest of $26,997.99. The basis for the assessment was the disallowance of the charitable deduction. A claim for refund in the amount of $215,609.10 was timely filed in February 1963, notice of disallowance was sent to plaintiff in August 1963, and the instant suit was filed in January 1964.

Each side has filed a motion for summary judgment.

*The Statute and Regulations*

The case is governed by sec. 2055 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2055, which provides, in substance, that for purposes of the estate tax, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies and devises to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, and all bequests, legacies and devises to trustees for such purpose, with certain provisos and other provisions not important in this case. Sec. 2055 of the 1954 Code is essentially similar to sec. 812(d) of the 1939 Code, which was involved in most of the cases cited herein.

Treasury Regulations on Estate Tax (1954 Code), sec. 20.2055–2, entitled "Transfers not Exclusively for Charitable Purposes", which has the effect of law,[3] outlines the requirements for such a deduction. The provisions material to this case read as follows:

"(a) *Remainders and Similar Interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. * * *

"(b) *Transfers Subject to a Condition or a Power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power. * * * *"[4]

3. Commissioner v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955); Bowers v. South Carolina National Bank of Greenville, 4 Cir., 228 F.2d 4 (1955); Moffett's Estate v. Commissioner, 4 Cir., 269 F.2d 738 (1959); Mercantile-Safe Deposit & Trust Company

(Weglein) v. United States, D.Md., 141 F. Supp. 546 (1956).

4. The rest of subsection (b) of sec. 20.2055–2 is not directly applicable. It provides: " * * * The deduction is not allowed in the case of a transfer in trust conveying to charity a present interest in

These provisions are essentially similar to secs. 81.44 and 81.46 of Treasury Regulation 105, which dealt with the 1939 Code and were involved in most of the cases cited.

## A

### *The Provisions with Respect to the Widow*

■ 1. Does the will provide a sufficiently definite standard limiting the extent of possible invasion for the benefit of noncharitable interests, so that the value of the charitable remainder was "presently ascertainable" at the time of the testator's death? This question must be decided from the will itself, without the use of extraneous evidence.[5]

The provisions of the will with respect to Mrs. Sargent, the widow, may be summarized as follows: Paragraph (a) of Item Third provides that the net income be applied for the *maintenance, support, comfort and welfare* of the widow, with a customary "spendthrift" provision. Paragraph (b) provides that the "spendthrift" provision shall not prevent the trustee from applying the "income or principal which would otherwise be payable to or for her benefit" under the will directly to her *support and maintenance,* and that if the widow becomes incapacitated, or if in the judgment and discretion of the trustee the welfare of the widow would be better served, the trustee may apply the income or other benefits to her *support and maintenance,* rather than paying them to her. Paragraph (c) directs that if the widow's income

from all sources is insufficient to provide her with the *best medical, hospital or nursing care or treatment in case of sickness,* the trustee shall apply to her *support, maintenance, comfort and general well being* such part of the principal of the trust estate as, in the absolute discretion of the trustee, shall be necessary to supply such deficiency.

The leading case is Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, 649 (1929), where the will gave the residue of the estate to the wife for life, with authority to use from the principal any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys". The Court sustained the right to the deduction, saying: "The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion." 279 U.S. at 154, 49 S.Ct. at 291.

■■ Following the Ithaca Trust decision, the courts have held that the standard is sufficiently definite where the will permits invasion for the beneficiary's "comfort and welfare". Blodget v. Delaney, 1 Cir., 201 F.2d 589 (1953), "proper care, support and maintenance", Lincoln Rochester Trust Co. v. Commissioner, 2 Cir., 181 F.2d 424 (1950), "support and maintenance", Berry v. Kuhl, 7 Cir., 174 F.2d 565 (1949), "to meet any unusual demands, emergencies, requirements or expenses for her personal needs

income if by reason of all the conditions and circumstances surrounding the transfer it appears that the charity may not receive the beneficial enjoyment of the interest. For example, assume that assets placed in trust by the decedent consist of stock in a corporation the fiscal policies of which are controlled by the decedent and his family, that the trustees and remaindermen are likewise members of the decedent's family, and that the governing instrument contains no adequate guarantee of the requisite income to the charitable organization. Under such circumstances, no deduction will be allowed. Similarly, if the trustees are not members

of the decedent's family but have no power to sell or otherwise dispose of the closely held stock, or otherwise insure the requisite enjoyment of income to the charitable organization, no deduction will be allowed."

5. Kline v. United States, N.D.W.Va., 202 F.Supp. 849, 852 (1962), affirmed per curiam, 4 Cir., 313 F.2d 633 (1963); Lincoln Rochester Trust Company v. McGowan, 2 Cir., 217 F.2d 287, 290 (1957); Seubert v. Shaughnessy, 2 Cir., 233 F.2d 134, 137 (1956); Blodget v. Delaney, 1 Cir., 201 F.2d 589 (1953); McGraw v. United States, W.D.Va., 229 F.Supp. 118, 120 (1964).

that may arise from time to time", Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287, 289 (1957), or for "the upkeep of the homeplace and all necessary medical and hospital expenses in the case of the illness" of either or both of the testator's sisters, Bowers v. South Carolina National Bank of Greenville, 4 Cir., 228 F.2d 4 (1955). Granting the trustee discretion with respect to the amount to be used for the specified purpose is not fatal. Neither is omission from the will of specific reference to the support or comfort "then enjoyed". See the cases cited above, and Internal Revenue Bulletin 54–285 (IRB 1954–29; P. H.Fed.Tax Serv., sec. 120,555.1), which stated:

"Where the power of invasion is limited by such words as 'comfort and support' with no express standard or limitation in the will or instrument, such words should be interpreted as meaning the comfort and support according to the standard of living enjoyed by the beneficiary power to the decedent's death, if such interpretation is consistent with applicable local law, and other terminology in the will or instrument does not require some different interpretation. * * *

"The trust instrument in the instant case impliedly fixes a definite standard, as the trustee is not authorized to use principal except for the proper comfort and support of the widow. * * * "

The cases relied on by the government are not in conflict with those rulings. In Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943), invasion was permitted for "the comfort, support, maintenance and/or happiness of my said wife", and the trustee was to exercise its discretion "with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust". The court said: "Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measureable. * * * Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial." 320 U.S. at 261, 263, 64 S.Ct. at 111, 112. In Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949), where the claimed charitable deduction was disallowed on the ground that the value of the ultimate charitable interest at the date of the testator's death was not "presently ascertainable", the income of the trust for the benefit of the testator's mother was "to be used by her as she sees fit", the invasion of principal was permitted for the mother's "pleasure, comfort and welfare", and the testator directed that "the first object to be accomplished * * * is to take care of and provide for my mother in such manner as she may desire". In Kline v. United States, N.D.W.Va., 202 F.Supp. 849, affirmed per curiam, 4 Cir., 313 F.2d 633 (1963), the Court said that the words "to the same generous extent that I, if living, could do * * * ", modifying the trust obligations for maintenance and support, spoke of the future, not the past. They comported change, not simply a continuance of an established mode of living and the following of a custom of the testatrix to contribute toward it. They amounted to a direction to the trustees to apply a subjective test of desire, not an objective test of need. Likewise, in Seubert v. Shaughnessy, 2 Cir., 233 F.2d 134 (1956), the life tenant herself was given a broad power of invasion for "any purpose which may add to her comfort or convenience". The Court said: "Although the words 'comfort and convenience' may conceivably import the standard of her accustomed way of life, the

right to invade for 'any purpose which may add' thereto fails to bond her to that norm, but rather authorizes her to go beyond it to an undetermined extent". 233 F.2d at 137.

■ No such words as "happiness" or "pleasure" occur in Dr. Sargent's will. The controlling words in paragraphs (a) and (b) of Item Third are "maintenance", "support", "comfort" and "welfare". The power of invasion, which is contained in paragraph (c), directs that if the widow's income from all sources is insufficient to provide her with the best medical, hospital or nursing care or treatment in case of sickness the trustee shall apply to her "support, maintenance, comfort and general well being" such part of the principal of the trust estate as, in the absolute discretion of the trustee, shall be necessary to supply such deficiency. The criteria to be applied by the trustee are objective, not subjective. The distinction between "happiness" and "pleasure" on the one hand and "comfort" and "welfare" on the other was noted in Blodget v. Delaney, Lincoln Rochester Trust Co. v. McGowan, Seubert v. Shaughnessy and other cases. The power of invasion is not so broad as the power in Merchants National Bank v. Commissioner, Henslee v. Union Planters Nat. Bank, Kline v. United States and Seubert v. Shaughnessy. It is more like the provisions in Bowers v. South Carolina National Bank, Blodget v. Delaney, Berry v. Kuhl, and the two Lincoln Rochester Trust Company cases, cited above, all of which were held to provide a sufficiently definite standard.[6]

The Court concludes that Dr. Sargent's will provides a sufficiently definite standard limiting the extent of possible invasion for the benefit of the widow. We, therefore, pass to the second question.

2. At the time of Dr. Sargent's death, which is the controlling date in this case, it was apparent that the trust estate created by the will would produce an annual income of approximately $35,500, if the charitable deduction were allowed. The widow would have other income from annuities of about $9,600, a total of approximately $45,000. If the charitable deduction were not allowed the estimate would have to be reduced by $9,500, to about $36,000. In fact the income for the first year ran just over the estimated amount, and for the second year some $3,600 higher.[7]

■ The actual expenses of Dr. and Mrs. Sargent, including income taxes, had been running between $30,000 and $40,000 per year during the last years of his life. The vice-president of the trustee in charge of the estate estimated that the living expenses of Mrs. Sargent would run around $18,000 a year after her husband's death. In fact they ran between $26,500 and $27,500, including income taxes but excluding gifts to employees and cash deposited in banks for other gifts and pin money. No invasion of corpus in fact occurred. The evidence with respect to events after the death of Dr. Sargent, the testator, is admissible only to show what might reasonably have been expected at the time of his death, and only in connection with this second question—whether the possibility that the charity would not take was so remote as to be negligible.[8] It has not been considered by the Court in connection with the first question—whether the will itself provided an ascertainable standard.

---

6. See also Internal Revenue Bulletin 54–285 (IRB 1954–29, P.H.Fed.Tax Serv., sec. 120,555.1); Mercantile-Safe Deposit, etc. v. United States (Weglein), D.Md., 141 F.Supp. 546 (1956); Mercantile-Safe Deposit, etc. v. United States (Havens), D.Md., 172 F.Supp. 72 (1959); and the list of cases contained as an appendix to the opinion in Kline v. United States, 202 F.Supp. at 853, et seq.

7. These figures exclude non-recurrent capital receipts totaling over $6,000.

8. Bowers v. South Carolina National Bank of Greenville, 4 Cir., 228 F.2d 4 (1955); Lincoln Rochester Trust Co. v. McGowan, 2 Cir., 217 F.2d 287 (1957); Mercantile-Safe Deposit, etc. v. United States, (Havens), D.Md., 172 F.Supp. 72 (1959).

If the case were before me to make findings of fact, I would disregard the estimate made by the vice-president of the trustee but would find that the possibility that an invasion of corpus would be made for the benefit of the widow was so remote as to be negligible. However, plaintiff has requested a jury trial, and I cannot say that no inference or conclusion favorable to the government could be drawn from the undisputed facts.

## B

### *The Provisions with Respect to the Servants.*

The provisions of the will with respect to the servants are that the trustee shall pay to each of them $1,000 a year for ten years after the death of Mrs. Sargent, or until the death of the annuitant before the expiration of the ten year period, with the power in the trustee, in its absolute discretion, "to use such part of the principal of the trust estate as may be necessary in its discretion to alleviate any financial emergency resulting to either" of them. This provision, though broad, must be read in the context of the whole will. So read, it does not prevent the value of the charitable remainder from being presently ascertainable.[9]

It was reasonably foreseeable at the time of the death of Dr. Sargent that after the death of Mrs. Sargent and the payment of the legacies, the balance of income available for the payment of the annuities, which totaled $8,000, would exceed $20,000 a year. In fact it has run between $25,900 and $28,200, even after the payment of the taxes assessed and sought to be recovered in this case. The will provides that the income in excess of the amount needed to pay the annuities is to be accumulated. The only annuities which are accompanied by a power of invasion are the annuities to William F.

and Eva Wiggins. Their standard of living may be judged by the fact that at the time of Dr. Sargent's death they were each being paid wages of $50 per week The chance that it would be necessary to invade principal for their benefit (beyond the amount of the income which was being accumulated annually) was so remote as to be negligible.

### *Conclusion*

The Court concludes that the will itself provides sufficiently definite standards limiting the extent of possible invasion for the benefit of non-charitable interests so that the existence of the powers themselves would not defeat the deduction. However, because the Court cannot say that conflicting inferences and conclusions cannot be drawn from the present record on the question whether the possibility of an invasion of corpus for the benefit of the widow was so remote as to be negligible, the Court must deny both motions for summary judgment.

---

9. See authorities cited in Section A of this opinion, particularly Lincoln Rochester Trust Co. v. McGowan, 2 Cir., 217 F.2d 287 (1957), and Bowers v. South Carolina National Bank of Greenville, 4 Cir., 228 F.2d 4 (1955). See also Commission-er v. Wells Fargo, 9 Cir., 145 F.2d 130; Mercantile-Safe Deposit etc. v. United States (Weglein), D.Md., 141 F.Supp. 546 (1956); Estate of Oliver Lee, 28 T.C. 1259 (1957).